PER CURIAM.
We granted leave to appeal to consider whether Detroit Edison Company owed plaintiff[1] a legal duty to de-energize an overhead power line that was severed by equipment being operated under plaintiffs direction. Relying on Groncki v Detroit Edison Co, 453 Mich 644; 557 NW2d 289 (1996), the Court of Appeals held that Edison had no reason to foresee plaintiffs injury because it had no reason to foresee that plaintiff *84 was the cause of the fault and, as a result, did not owe a legal duty to plaintiff.[2] We affirm.
i
In 1974, plaintiff purchased a four-acre gravel lot in Imlay City; in 1987, he opened a used car business. At all times, uninsulated power lines owned by Edison existed along the back property line. These lines were suspended more than twenty-five feet in the air. Plaintiff admitted that he was aware of the lines and the danger they posed.
On August 15, 1995, plaintiff was injured while giving directions to the driver of a dump truck delivering fill dirt to the back portion of his property. As the truck became free of the weight of its load, it rose upward and its highest edge severed an overhead power line. The ground was wet, and the electricity that flowed through the truck continued through the ground to plaintiff, who was standing six or seven feet away, knocking him unconscious.
A sensor known as an automatic reclosure device detected the fault in the severed line almost immediately, and momentarily stopped the current flow. Because many faults are temporary, the sensor is designed to restart the current flow three times within a period of six seconds, checking each time to see whether the fault remains. If the fault has cleared, the sensor will allow the line to remain energized. If, after these three cycles, the fault remains, the sensor will completely de-energize the line. By using this sensor, Edison can avoid unnecessary interruptions of its customers’ ser *85 vice that would be caused by faults occasioned by a power line’s fleeting contact with objects like tree limbs and small animals.
Here, the sensor operated as intended; it restarted the current three times and then de-energized the line when the fault failed to clear. Plaintiff suffered second-degree burns to his back and arm from the shocks that he received while the sensor completed its cycles.
ii
Plaintiff and his wife sued Edison, alleging that the company was liable in tort.[3] Edison moved for summary disposition, arguing that it owed no legal duty to plaintiff. Plaintiff opposed the motion by arguing that Edison owed it a legal duty to de-energize the severed power line immediately. Plaintiff asserted that Edison should have foreseen that its use of the sensor could cause injury. The trial court agreed with plaintiff and denied Edison’s motion.
The Court of Appeals granted Edison’s application for leave for interlocutory appeal and reversed the decision of the trial court. After consideringthis Court’s opinion in Groncki, it concluded that Edison owed no legal duty to plaintiff and was entitled to summary disposition.
We granted plaintiffs application for leave to appeal. 468 Mich 868 (2003).
hi
We review de novo appeals relating to summary disposition. Maiden v Rozwood, 461 Mich 109, 118; 597 *86 NW2d 817 (1999). The existence of a legal duty is a question of law.[4] Groncki, 453 Mich 649; Beaudrie v Henderson, 465 Mich 124, 130; 631 NW2d 308 (2001). In determining whether a legal duty exists, courts examine a variety of factors, including “foreseeability of the harm, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and ... the burdens and consequences of imposing a duty and the resulting liability for breach.” Buczkowski v McKay, 441 Mich 96, 101 n 4; 490 NW2d 330 (1992) (citing Prosser & Keaton, Torts [5th ed], § 53, p 359 n 24). See also Schultz v Consumers Power Co, 443 Mich 445, 450; 506 NW2d 175 (1993).
In this case, plaintiff does not argue that Edison failed to inspect the power lines, or that the lines were in disrepair.[5] Instead, plaintiff argues that Edison had a legal duty to de-energize the power line immediately and completely after it was severed by the dump truck. This Court addressed a power company’s legal duty to de-energize a power line in Groncki. That case consolidated three lawsuits brought against Edison by individuals who were injured when equipment they were using outdoors came into contact with overhead power *87 lines.[6] 453 Mich 650-653 (opinion by BRICKLEY, C.J.). In the lead opinion, Chief Justice BRICKLEY concluded that the injuries suffered by the three plaintiffs were not foreseeable and that Edison owed them no legal duty. He added that public policy considerations, including the “public’s need for electric power at a reasonable cost,” further militated against imposing a legal duty under the circumstances. Id. at 661.[7]
Similar considerations are implicated in this case. However, we need not reach the balancing required by Buczkowski. See Buczkowski, supra at 101 (“Other considerations may be, and usually are, more important [than foreseeability].”). The circumstances surrounding plaintiffs injury fail to satisfy even the lowest threshold requirement—that the harm incurred was foreseeable. See Brown v Michigan Bell Tel, Inc, 459 Mich 874 (1998).
Edison had no obligation to anticipate that the dump truck operated under plaintiffs direction would sever an overhead power line that was suspended more than twenty-five feet above the ground, much less that *88 plaintiff would be standing on wet ground several feet away. As a result, Edison had no legal duty to anticipate that plaintiff might be injured when the sensor device briefly re-energized the line, as it was designed to do, or to take other steps to prevent plaintiffs injury. Because we conclude that plaintiffs injuries were unforeseeable as a matter of law, we need not consider other variables that might militate against the imposition of a legal duty where harm is foreseeable. See Buczkowski, supra at 102.[8]
We therefore affirm the Court of Appeals opinion reversing the decision of the trial court and remanding this case for entry of an order of summary disposition in favor of Edison. MCR 7.302(G)(1).
Corrigan, C.J., and Cavanagh, Weaver, Taylor, YOUNG, and Markman, JJ., concurred.

 Throughout this opinion, “plaintiff” refers only to Steven J. Valcaniant. Although plaintiffs wife, Kathleen A. Valcaniant, is also a party to the lawsuit, her claims are derivative.

 Unpublished opinion per curiam, issued February 19, 2002 (Docket No. 227499).

 They also sued the contractor who operated the dump truck. That party was later dismissed by stipulation.

 Duty concerns whether a defendant is under any legal obligation to act for the benefit of the plaintiff. Buczkowski v McKay, 441 Mich 96, 100; 490 NW2d 330 (1992). This concept should be distinguished from the standard of care, which, in negligence cases, always requires reasonable conduct. See id. (distinguishing “between duty as the problem of the relational obligation between the plaintiff and the defendant, and the standard of care that in negligence cases is always reasonable conduct”).

 As a result, this Court’s opinion in Schultz, 443 Mich 451, in which we held that the standard of care requires a power company “to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects,” is not pertinent to this case.

 In Groncki, a condominium complex’s maintenance supervisor accidentally brought an aluminum ladder into contact with a power line twenty-one feet overhead. In Bohnert, a truck driver deployed his truck’s unloading boom in a way that caused it to contact a power line twenty-six feet overhead. Finally, in Parcher, a construction worker used a forklift to move scaffolding and caused the scaffolding to contact a power line that was thirty-five feet overhead.

 No other justice signed the lead opinion. Justice Boyle concurred in the result only. Id. at 665. Justice Weaver, joined by Justice Riley, concurred with Chief Justice Brickley regarding the rationale and disposition of the claims against Edison, but dissented regarding the liability imposed on a nonutility defendant. Id. at 674. Justice Mallett, joined by Justice Cavanagh, concurred in the disposition of Bohnert and Parcher, but dissented in Groncki because they believed that the harm suffered by that plaintiff was foreseeable. Id. at 665. Finally, Justice Levin dissented in all three cases. Id. at 681.

 We noted in Buczkowski that “[w]here foreseeability fails as an adequate template for the existence of a duty, recourse must be had to the basic issues of policy underlying the core problem whether the plaintiffs interests are entitled to legal protection against the defendant’s conduct.” Id. at 102.