# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of CATHERINE DAWN SKIDMORE.

---

RALPH SKIDMORE, JR., Individually and as
Personal Representative for the Estate of
CATHERINE DAWN SKIDMORE,

      Plaintiff-Appellant,

v

CONSUMERS ENERGY COMPANY,

      Defendant-Appellee.

FOR PUBLICATION
May 24, 2016

No. 323757
Calhoun Circuit Court
LC No. 2012-001595-NH

---

ON RECONSIDERATION

Before: SHAPIRO, P.J., and O'CONNELL and BORRELLO, JJ.

O'CONNELL, J. (*concurring in part and dissenting in part*).

The adage "be careful what you wish for" comes to mind. In asking this Court to clarify our previous opinion on the basis of concerns of what Consumers might argue based on overblown and distorted readings of this Court's prior opinion,[1] the estate opens a can of worms. The opinion on remand does not "correct" what either party contends are deficiencies with the previous opinion, but instead raises premises liability issues that were not raised or briefed below and are frankly irrelevant in this general negligence case. Rather than clarify or reach a different result than the previous opinion, the opinion on reconsideration simply confuses the issues more. I would therefore not grant reconsideration and remain with the analysis in the original opinion, which I restate here for convenience:

> A live power line on the ground is far more hazardous than a live power line in the air. In this wrongful death action, plaintiff Ralph Skidmore, Jr., individually and as the personal representative of the estate of Catherine Dawn Skidmore (collectively, the estate), appeals of right the trial court's order granting

---

[1] Consumers, meanwhile, essentially restates the same arguments this Court previously rejected.

-1-

summary disposition in favor of defendant, Consumers Energy Company (Consumers), under MCR 2.116(C)(10). The trial court concluded that Consumers did not owe Catherine a duty because it was not foreseeable that she would run across her neighbor's darkened yard to warn him of a fire that resulted from a downed power line. We reverse and remand.

## I. FACTUAL BACKGROUND

According to Ralph, the evening of July 19, 2011, was warm and clear. As Ralph was getting into bed that evening, the lights flickered and Catherine began screaming that a neighbor's van was on fire. Ralph looked out a window and saw sparks and fire coming from the van across the street. He could see that a power line had fallen on top of the van, and he explained that he could only see movement and light because it had fallen on the opposite side of the van.

Ralph testified that Catherine thought that the van might explode and was frantic with concern for the man who lived in the house across the street. Catherine "bolted out of the house" to warn the neighbor, Roody Cooper. Ralph testified that Catherine ran for the window where the neighbor Cooper was standing. Ralph heard people yell for her to stop, but he opined that she likely did not hear them over the loud crackling of the electricity.

According to Cooper, the power line that broke runs above the southeastern corner of his house. Cooper heard a loud boom, followed by a brilliant flash and a buzzing sound. He looked outside and saw flashing sparks in a bush, so he called 911. The line was sliding "like it was pulling itself through the bush." Cooper saw Catherine on the porch on the northwestern corner of his home. She yelled to him that there was a fire, and he shouted back that he heard. As he was traveling to the other end of his house, he heard a sharp crack and a lot of yelling.

Cooper, Don Stutzman, and James Beam testified that Cooper's yard was dark. Stutzman and Beam testified that they could not see where the line was in the yard. They yelled at Catherine to stop but could not tell if she heard them. Ralph saw a wire twist around Catherine's legs. Catherine began shaking and then caught on fire. Despite efforts to put Catherine out with a fire extinguisher, she repeatedly lit on fire and died.

According to Ralph, the power lines in the neighborhood had been a problem for about 25 years, and the power would go off two or three times a summer. Stutzman and Beam also testified about frequent power outages and electrical problems. Ralph testified that following a windstorm in May 2011, Consumers worked on the lines but neighbors complained about the power lines being too tight, including the line that broke on the night of the accident. Beam testified the power line that broke was a short pole anchored to a pole that had been broken.

Ralph testified that a power line had also fallen one year before the accident, and Cooper testified that the incident in 2011 was the second consecutive summer that a high voltage line had fallen in his yard. Cooper testified that he told the workers that the trees needed to be trimmed and neighbors had complained about the trees causing arcing and sparking during wind and rain. James Leahy, a journeyman line worker, testified that if a tree touches a line and causes a repeated arc, the power line may fall. However, other deponents testified that there are many reasons why a power line could fall, including the activities of weather and animals.

Dr. Campbell Laird, one of the estate's experts, opined that Consumers lacked a "systematic inspection system" for the maintenance of vegetation surrounding power lines. Laird averred that a properly maintained power line should not fall absent some trauma to the line. Richard L. Buchanan, a public-utility expert, opined that Catherine's death was caused by poor vegetation management. Buchanan asserted that the 2010 incident with the power line should have warned Consumers about the power lines in Catherine's neighborhood. Buchanan concluded that Consumers violated industry standards by failing to conduct preventative vegetation trimming.

The estate filed suit in May 2012. The estate asserted claims of negligence and negligent infliction of emotional distress, based in pertinent part on Consumers's duty to reasonably inspect and maintain its power lines. In July 2014, Consumers filed a motion for summary disposition, asserting that it was not reasonably foreseeable that Catherine would run into the downed power line. Following a hearing on the motion, the trial court concluded that Catherine's actions were not reasonable and, therefore, Consumers did not owe Catherine a duty. It granted summary disposition. The estate now appeals.

## II. STANDARDS OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When a party moves for summary disposition under MCR 2.116(C)(8) and (10), and the trial court considered documents outside the pleadings when deciding the motion, we review the trial court's decision under MCR 2.116(C)(10). *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007).

A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013). Whether a defendant owed a plaintiff a duty is a question of law that this Court reviews de novo. *In re*

*Certified Question From the Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498, 504; 740 NW2d 206 (2007).

## III. DUTY

The estate contends that the trial court improperly conflated questions concerning whether Consumers owed Catherine a duty, a question of law, with comparative negligence, which is a question of fact for a jury to decide. We disagree, but we conclude that a question of fact precludes summary disposition.

To prove negligence, a plaintiff must show that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the plaintiff was injured, and (4) the defendant's breach caused the plaintiff's injury. *Henry v Dow Chemical Co*, 473 Mich 63, 71-72; 701 NW2d 684 (2005). "Every person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others." *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012). But if it is not foreseeable that the defendant's conduct could pose a risk of injury to a person with whom the defendant has a relationship, then there is no duty not to engage in that conduct. *Certified Question*, 479 Mich at 508.

The extent of duty that an electric utility company owes the public has been a topic of this state's jurisprudence for over a century. See, e.g., *Huber v Twin City Gen Electric Co*, 168 Mich 531, 535; 134 NW 980 (1912). More recently, the Michigan Supreme Court has applied modern tort principles to explain an electrical utility company's duty to the general public. *Schultz v Consumers Power Co*, 443 Mich 445, 450; 506 NW2d 175 (1993).

In *Schultz,* the plaintiff's decedent was electrocuted while helping a friend paint his house. *Id*. at 447. While moving a 27-foot aluminum extension ladder, the defendant's medium-voltage electrical wires electrocuted the decedent. *Id*. at 447-448. The plaintiff alleged that a fray in the wire allowed the electrical current to arc to the nearby ladder. *Id*. at 448-449.

The Court held that "a power company has an obligation to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects." *Id*. at 451. This duty "involve[s] more than merely remedying defective conditions actually brought to its attention." *Id*. at 454. The Court reasoned that "it is well settled that electricity possesses inherently dangerous properties requiring expertise in dealing with its phenomena." *Id*. at 451.

However, this duty does not include guarding against every possible contact with the power lines. In Chief Justice BRICKLEY's lead opinion resolving the consolidated cases in *Groncki v Detroit Edison Co*, 453 Mich 644; 557 NW2d 289 (1996),[1] the Michigan Supreme Court rejected several claims involving accidental contacts with overhead wires. The Court explicitly recognized that the

cases did not involve allegations of poorly maintained wires. *Id*. at 657, 660. Rather, in the specific circumstances of the cases, the defendant had no reason to foresee that equipment would come into contact with its reasonably placed powerlines. *Id*. at 657, 660. And in *Valcaniant*, the Michigan Supreme Court rejected a case in which a dump truck's driver was shocked after accidentally severing overhead power lines. *Valcaniant v Detroit Edison Co*, 470 Mich 82, 84-85; 679 NW2d 689 (2004). Again, the Court explicitly noted that the lines' state of repair was not pertinent to its holding, and the holding did not implicate the defendant's duty to inspect its lines. *Id*. at 86.

Consumers contends that it had no more duty in this case than the defendants had in *Groncki* and *Valcaniant*. We disagree.

First, each of these cases are distinguishable because the Court specifically noted that the state of repair of the lines was not in issue. In this case, the state of repair of Consumers's lines is directly in issue. Second, Consumers fails to comprehend that the risks of accidental contact with a live power line suspended in the air and accidental contact with a live power line on the ground are fundamentally different. As stated by Chief Justice CARDOZO in an axiom familiar to any first-year torts student, "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v Long Island R Co*, 248 NY 339, 344; 162 NE 99 (1928). If nothing else, people are more likely to be in close proximity to a power line on the ground than they are likely to be if the power line is suspended in the air.

The question is whether it is reasonably foreseeable that failing to reasonably inspect and maintain power lines would result in a dangerous situation to a person on the ground. *Schultz* answers this question in the positive, providing that "a power company has an obligation to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects." *Schultz*, 443 Mich at 451. It is not a leap to conclude that this duty includes an obligation to reasonably inspect for fraying lines, since a frayed line was responsible for the injury in *Schultz*. An injury due to a live power line on the ground is far more foreseeable than an injury due to a power line in the air.

---

[1] The *Groncki* Court was fractured regarding its rationale. See *Valcaniant v Detroit Edison Co*, 470 Mich 82, 87 n 7; 679 NW2d 689 (2004) (providing an overview of the Justices' positions in *Groncki*).

Consumers contends that it could not have expected that Catherine would run toward, rather than away from, the power line. However, that argument focuses too closely on the particular act that resulted in injury. The *Schultz* Court explained that the foreseeability of an injury depends in part on the expected uses of an area:

> Those engaged in transmitting electricity are bound to anticipate ordinary use of the area surrounding the lines and to appropriately safeguard the attendant risks. *The test to determine whether a duty was owed is not whether the company should have anticipated the particular act from which the injury resulted*, but whether it should have foreseen the probability that injury might result from any reasonable activity done on the premises for business, work, or pleasure. [*Id*. (emphasis added).]

The area surrounding the power line was residential. It is foreseeable that people would be using the surrounding streets and yards and would be at risk if the power line fell. We conclude that it was reasonably foreseeable that an injury could follow from failing to inspect and maintain a power line in a residential area.

Additionally, it is reasonably foreseeable that those persons in the residential area would act in response to the emergency. "[R]escuers, as a class, are foreseeable." *Solomon v Shuell*, 435 Mich 104, 135; 457 NW2d 669 (1990) (opinion by ARCHER, J); *id*. at 151 (opinion by BOYLE, J.). Rescuers must act reasonably. *Id*. at 135 (opinion by ARCHER, J.). But whether the rescuer acted reasonably is a question of fact, not a question of law. *Id*. at 136.[2]

We conclude that there is an issue of material fact regarding whether Catherine acted reasonably. Ralph testified that he and Catherine both were aware that a power line had fallen. However, Ralph also testified that Catherine was frantic, concerned for her neighbor, and went to his home to warn him of the danger. Cooper testified that Catherine approached his southwestern door, away from obvious sparks and fire around the van at the house's southeastern corner. On the other hand, Catherine also ran across a darkened yard while people were yelling for her to stop, with the knowledge that there was a downed power line nearby. Even the trial court stated that whether Catherine's actions were reasonable constituted a close question. We conclude that reasonable minds could differ on this issue. Accordingly, the trial court erred when it granted summary disposition on the estate's claims on the basis that Consumers did not owe Catherine a duty.[3]

---

[2] That the reasonableness of a rescue is a question of fact holds true to the general principle that the fact that a plaintiff was also negligent does not alter the nature of the defendant's initial duty. *Riddle v McLouth Steel Prods Corp*, 440 Mich 85, 98; 485 NW2d 676 (1992).

[3] To the extent that Consumers raises causation issues on appeal, Consumers did not raise these issues below. An appellee need not file a cross-appeal to argue alternative reasons to affirm, but the appellee must have presented the reasons to the trial court. *Riverview v Sibley Limestone*, 270 Mich App 627, 633 n 4; 716 NW2d 615 (2006). We decline to address these unpreserved issues because they do not concern issues of law, are not necessary to the resolution of the remaining

issues, and our failure to rule on them will not work a manifest injustice.  See *Heydon v MediaOne of Southeast Mich, Inc*, 275 Mich App 267, 278; 739 NW2d 373 (2007).

---

In sum, I concur in the result reached and the reasoning regarding duty in the opinion on reconsideration, but dissent from the portion rejecting "on factual and legal grounds" Consumers's arguments.  The prior opinion recognized that the existence of a disputed question of fact regarding the reasonableness of Catherine's actions did not affect whether Consumers owed Catherine a duty (indeed, regardless of the estate's stated confusion on the issue, it is hard to imagine that this Court could have been more clear than stating in the second footnote that the fact the plaintiff was also negligent did not alter the nature of the defendant's initial duty).  And the discussion of premises liability, an issue neither raised below nor argued by the parties on appeal *or reconsideration*, is unnecessary.  The only question was whether the trial court properly granted summary disposition on the basis that Catherine did not act reasonably and, therefore, Consumers did not owe her a duty.  I stand by this Court's initial analysis.

/s/ Peter D. O'Connell