# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF JUDITH ANN KELLY, by WENDY
MCKNIGHT, Personal Representative, and
PATRICIA ALDRICH,

Plaintiffs-Appellees,

v

OHM SPECIALTY PHARMACY, LLC, doing
business as DOWNS PHARMACY,

Defendant-Appellant,

and

CHIDOZIE JOSHUA ONONUJU, D.O., RAMON
RODRIGUEZ, M.D., and AMERICAN
MEDICAL MISSIONARY CARE, INC.,

Defendants.

UNPUBLISHED
October 23, 2018

No. 338140
Saginaw Circuit Court
LC No. 16-028627-NO

---

Before: METER, P.J., and GADOLA and TUKEL, JJ.

TUKEL, J. (*concurring*).

## I.

I join fully in the majority opinion, which correctly sets forth what has long been settled law in Michigan—that pharmacies and pharmacists generally have no potential liability to pharmacy customers and, by extension, third-parties who fill facially valid prescriptions according to the prescribed terms, which cause injury. I write separately because some of the bases for reaching that conclusion have been outstripped by subsequent legislative events, and others seem to have been incorrect even when decided. Consequently, our Supreme Court or Legislature might wish to revisit this issue to bring current law more in line with recent developments.

## II.

As noted by the majority, this Court has consistently held that pharmacists have no duty to look beyond a prescription which is facially valid. The majority properly relies on such cases,

-1-

as they are binding on us. MCR 7.215(B). However, the underlying principle on which those cases relied, that a pharmacist is not required to look beyond the facial validity of a prescription for a controlled substance is not correct, and was not correct at the time those cases were decided; both federal and state law previously imposed and today continue to impose an obligation on pharmacists to independently consider whether a prescription for a controlled substance has been issued "in the usual course of professional practice," meaning that it was issued in good faith and for a legitimate medical purpose.

A. History of Cases Involving Pharmacist Liability to Third-Parties

As the majority opinion notes, this Court has addressed the duty of a pharmacy toward a patient in a number of cases. The two principal building blocks are *Adkins v Mong*, 168 Mich App 726, 728-729; 425 NW2d 151 (1988), and *Stebbins v Concord Wrigley Drugs, Inc*, 164 Mich App 204, 207; 416 NW2d 381 (1987).

*Adkins* involved negligence and malpractice claims against the defendant physicians and pharmacies for their prescribing and supplying the plaintiff with excessive amounts of controlled substances over the course of six years. *Adkins*, 168 Mich at 727. The plaintiff alleged that he became addicted to various substances as a result of the defendants' negligence and malpractice. *Id*. This Court stated that a pharmacist has a duty to fill lawful prescriptions properly and will not generally be held liable when he or she correctly fills a prescription that was issued by a licensed physician. *Id*. at 729, citing *Stebbins*, 164 Mich App at 245, and *Lemire v Garrard Drugs*, 95 Mich App 520, 528; 291 NW2d 103 (1980). The Court concluded that a pharmacist does not have a legal duty "to monitor and intervene with a customer's reliance on drugs prescribed by a licensed treating physician." *Adkins*, 168 Mich at 732.

*Adkins*, as noted, had relied on *Stebbins*, in which this Court addressed whether a pharmacy had a duty to warn a patient to whom it dispensed a prescription medication which was not a controlled substance.[1] This Court noted that "[a] pharmacist is generally not held liable for damages resulting from a correctly filled prescription." *Stebbins*, 164 Mich App at 216. It ruled that "a pharmacist has no duty to warn the patient of possible side effects of a prescribed medication where the prescription is proper on its face and neither the physician nor the manufacturer has required that any warning be given to the patient by the pharmacist." *Id*. at 218.

*Lemire*, also cited by *Adkins*, also did not involve a controlled substance. *Lemire* extensively discussed product liability, which has no applicability here, but devoted only a single paragraph to the issue of pharmacist liability for negligence, citing only Am Jur 2d and no other authority. *Lemire*, 95 Mich App at 526.

Under our rules, neither *Adkins*, *Stebbins*, nor *Lemire* is controlling, as each was issued prior to 1990, see MCR 7.215(J)(1), and, in any event, as noted, neither *Stebbins* nor *Lemire* involved controlled substances. However, in *Kintigh v Abbott Pharmacy*, 200 Mich App 92, 94;

---

[1] The drug at issue was Tofranil, which is not a controlled substance.

503 NW2d 657 (1993), this Court again considered whether the defendant pharmacy owed the plaintiff a duty to refrain from selling him Schedule V, nonprescription controlled substances which allegedly led to and fed his addiction. This Court, relying on *Adkins*, found that the pharmacy owed the plaintiff no duty to discover his addicted status and, having no knowledge of this status, it "had no duty to refuse to sell to him." *Id*. The *Kintigh* Court stated that in *Adkins*, the panel had "rejected the theory that a pharmacist owed a customer a legal duty to monitor drug usage." *Id*. A dissent did consider the pharmacist's possible duty to consider the propriety of a pharmacist's dispensing of controlled substances, at least those in Schedule V, see *id*. at 98-102 (SHELTON, J., dissenting), which permit but do not require a prescription, see Note 3, *infra*.[2] However, neither the majority nor the dissent considered the federal regulation discussed in the next part of this opinion.

### B. Federal Regulations Regarding Controlled Substances

In short, as already noted, none of the cases which led to the extant state of the law regarding pharmacist liability for the dispensing of controlled substances considered a federal regulation which imposes on pharmacists the "corresponding responsibility" to consider the propriety of a prescription. *Adkins*, the earliest case involving a controlled substance, was decided in 1987; *Lemire*, the oldest case involving pharmacist liability in general was decided in 1980. Effective in 1974, however, a federal regulation, still in force today, provided:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, *but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription* within the meaning and intent of section 309 of the Act (21 USC 829) *and the person knowingly filling such a purported prescription*, as well as the person issuing it*, shall be subject to the penalties provided for violations of*

---

[2] The four cited cases, *Adkins*, *Stebbins*, *Lemire* and *Kintigh*, committed two major errors: they treated prescriptions for controlled substances and non-controlled substances interchangeably; and they overlooked state statutory and federal regulatory authority regarding controlled substances, see Part II-B, *infra*. Thus, in my view, *Stebbins* and *Lemire* have no applicability to the issues presented here because my analysis is limited to Michigan statutory law and federal regulations regarding controlled substances. The allegations in the complaint in this case relate to controlled substances. Moreover, *Stebbins* stated that "[w]e need not consider a pharmacist's liability in situations such as where the pharmacist knows of a particular patient's unique problems or where a pharmacist fills two incompatible prescriptions." *Stebbins*, 164 Mich App at 218. Of course, in the context of controlled substances, such situations fall squarely within the pharmacist's "corresponding responsibility" under federal regulations to consider the validity of such prescriptions, see Part II-B, *infra*.

*the provisions of law relating to controlled substances.* [36 Fed Reg 80, § 306.04 (April 24, 1971), codified thereafter and currently at 21 CFR 1306.04(a) (2018) (emphasis added).]

Thus, it has been the case since 1971 that under federal regulations, a physician can be held criminally liable when he prescribes or administers controlled substances other than "within the usual course of professional practice," *United States v Moore*, 423 US 122, 138-139; 96 S Ct 335; 46 L Ed 2d 333 (1975), and a pharmacist has a "corresponding responsibility" to ensure that a prescription meets that requirement. That regulation has applied with full force to Michigan pharmacists since its inception, based on the Supremacy Clause, see US Const, art VI, cl 2. Thus, *Adkins* was incorrect when it held that a pharmacist had no legal duty to monitor prescribing by a physician; federal law in fact created such an obligation as to controlled substances. The complaint in this case alleged that the physicians' prescribing of controlled substances was negligent, and that the pharmacist who filled the prescriptions was himself negligent. Under the federal regulation, that allegation at a minimum stated facts regarding the physician's prescribing which the pharmacist was, under his corresponding responsibility, required to consider.

### C. Michigan Statutory Law Regarding Controlled Substances

Federal law is not the only basis for finding that a pharmacist has a duty to monitor a pharmacist's prescribing of controlled substances. Michigan law expressly incorporates federal law in this regard. Michigan statutory law has long provided that "[t]he person to whom a pharmacy license is issued and the pharmacists on duty [are] responsible for compliance with federal and state laws regulating the distribution of drugs and the practice of pharmacy." MCL 333.17741(2). That statute traces back to 1978, antedating cases such as *Adkins* and *Kintigh* (as well as the cases involving non-controlled drugs), contrary to their holdings that Michigan pharmacists generally have no duty to monitor prescribing by doctors. See 1978 PA 368 (effective September 30, 1978).

Moreover, our Legislature has recently tightened the standards by which pharmacists may dispense controlled substances. See 2017 PA 251 (effective March 27, 2018). That Act, codified at MCL 333.7333, provides that a practitioner, defined by the Act to include pharmacists, "in good faith, may dispense a controlled substance . . . upon receipt of a prescription of a [physician] licensed under [MCL 333.7303]." MCL 333.7333(2); see also MCL 333.7333(4).[3] A pharmacist, as a licensee, may not "dispense a controlled substance in

---

[3] Subsection 2 applies to schedule II controlled substances. Subsection 4 applies to controlled substances in schedules III-V. The only substantive difference is that prescriptions for controlled substances in schedules III-V can be written or oral, while prescriptions for a schedule II controlled substance must be written. Additionally, while controlled substances in schedule V may be dispensed with or without a prescription, they "must not be distributed or dispensed for other than a medical purpose, or in any manner except in accordance with rules promulgated by the administrator." MCL 333.7333(5).

violation of [MCL 333.7333]." MCL 333.7405(1)(a). And a pharmacist who does so is subject to civil and criminal penalties. MCL 333.7405(2); MCL 333.7406.

MCL 333.7333(1) then provides standards, by providing an extensive definition of the term "good faith":

> "[G]ood faith" means the prescribing or dispensing of a controlled substance by a practitioner licensed under [MCL 333.7303] in the regular course of professional treatment to or for an individual who is under treatment by the practitioner for a pathology or condition other than that individual's physical or psychological dependence upon or addiction to a controlled substance, except as provided in this article. Application of good faith to a pharmacist means the dispensing of a controlled substance pursuant to a prescriber's order which, in the professional judgement of the pharmacist, is lawful. The pharmacist shall be guided by nationally accept professional standards including, but not limited to, all of the following, in making the judgment:
>
> (a) Lack of consistency in the doctor-patient relationship.
>
> (b) Frequency of prescriptions for the same drug by 1 prescriber for larger numbers of patients.
>
> (c) Quantities beyond those normally prescribed for the same drug.
>
> (d) Unusual dosages.
>
> (e) Unusual geographic distances between patient, pharmacist, and prescriber.

### D. Application to Civil Liability for Prescription

The authorities cited above relate to possible criminal liability by pharmacists under federal law and the Michigan Public Health Code, and thus do not directly control possible civil liability by a pharmacist. Rather, the statute only defines what constitutes a lawfully issued and filled prescription. A physician and, in turn, a pharmacist who violates the statutory provisions by "not acting in good faith 'in the course of professional practice or research' are prosecutable" under the Controlled Substances Act of 1971. *People v Alford*, 405 Mich 570, 579; 275 NW2d 484 (1979).[4]

---

[4] At the time *Alford* was decided, MCL 335.341(1) of Michigan's Controlled Substances Act of 1971, provided for criminal penalties for unlawful distribution or dispensing of controlled substances. That section was repealed and supplanted by the Public Health Act of 1978, which remains in force as amended. See 1978 PA 368, codified at MCL 333.1101 *et seq.*

Nevertheless, the fact remains that our Legislature has expressly set forth, with a fair amount of detail, a particular number of factors for pharmacists to consider in applying their "corresponding responsibility" under federal law, and its state-law analogue, their obligation to act in good faith, regarding prescriptions for controlled substances. As the majority notes, in determining whether a common-law duty arises, and thus civil liability attaches, courts must consider various factors. The factors which are pertinent to the determination of the existence of a duty include the " 'foreseeability of the harm, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and . . . the burdens and consequences of imposing a duty and the resulting liability for breach.' " *Valcaniant v Detroit Edison Co*, 470 Mich 82, 86; 679 NW2d 689 (2004), quoting *Buczkowski v McKay*, 441 Mich 96, 101 n 4; 490 NW2d 330 (1992).

As noted in Part II-A of this opinion, this Court has previously weighed those factors, and we are not at liberty to reconsider or overrule those holdings.[5] Nonetheless, the authorities cited implicate " 'the burdens and consequences of imposing a duty and the resulting liability for breach.' " *Valcaniant*, 470 Mich at 86, quoting *Buczkowski*, 441 Mich at 101 n 4.

The "corresponding responsibility" of federal law imposes a "significant burden and consequence" on pharmacists as to the proper prescribing and dispensing of controlled substances because it creates an obligation for pharmacists to consider the pattern of prescribing of controlled substances by doctors and whether such prescribing is proper. As such, the federal regulation is a factor which should properly be considered in determining whether a common-law duty should be imposed, and thus whether, under any circumstance, a pharmacist can be ever be found negligent for filling a facially valid prescription for a controlled substance according to its terms. Based on the undisputed facts of this case, one could reasonably question whether the doctor acted in good faith in prescribing. See, generally, *ante* at 1-3. As the pharmacy had a corresponding responsibility to that of the pharmacist, a very significant burden, if we were writing on a blank slate in considering a pharmacist's potential duty, we might well determine that our definition of that duty would permit a jury to find that the pharmacy was liable.

Moreover, even completely setting aside the issue with regard to "corresponding responsibility," our Legislature has recently made clear that a pharmacist acts lawfully in filling

---

[5] See Part II and Part II-A, *supra*. Justice Brandeis famously opined that "[s]tare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right." *Burnet v Coronado Oil & Gas Co*, 285 US 393, 406; 52 S Ct 443; 76 L Ed 815 (1931) (BRANDEIS, J., dissenting), majority overruled in part in *Helvering v Mountain Producers Corp*, 303 US 376; 58 S Ct 623; L Ed 907 (1938). In the next sentence, Justice Brandeis went on to note that "[t]his is commonly true even where the error is a matter of serious concern, provided correction can be had by legislation." *Id.* My point is that our Legislature has set forth public policy considerations which arguably apply here, and if they do, they may constitute a correction of the errors discussed. As noted, we are constrained by the Michigan Court Rules to follow stare decisis as to this issue, but our Supreme Court is not, as the opinions at issue are from this Court only and thus not binding on our Supreme Court.

a prescription for a controlled substance only if he or she acts in good faith. The Legislature has provided a detailed list of non-exclusive factors to use in determining a pharmacist's good faith. The requirement of good-faith, and the list of factors to consider in determining it, seems inconsistent with the prior approach which this Court endorsed, in which the Court held flatly that "there exists no legal duty on the part of a pharmacist to monitor and intervene with a customer's reliance on drugs prescribed by a licensed treating physician." *Adkins*, 168 Mich App at 732.

The complicating factor in this case is that the Legislature's actions in amending MCL 7333(1), as well as subsections (2) and (4), took place after the trial court had granted summary disposition based on existing cases. "Usually in appellate review, we look to the law as it was at the time of the judicial or administrative action from which appeal is taken." *Ann Arbor Bank & Trust Co v Comm'r of Fin Inst Bureau*, 85 Mich App 131, 136; 270 NW2d 725 (1978). An exception lies if the statute is remedial or procedural in nature, as long as it does not deny vested rights. *Aztec Air Service, Inc v Dep't of Treasury*, 253 Mich App 227, 233; 654 NW2d 925 (2002). "A statute is remedial in nature when it corrects an existing oversight in the law, redresses an existing grievance, introduces regulations conducive to the public good, or intends to reform or extend existing rights." *Lenawee Co v Wagley*, 301 Mich App 134, 174-175; 836 NW2d 193 (2013).

Here, as noted, the statute itself is an amendment to the Public Health Code, which is a "regulation[] conductive to the public good." *Id*. Thus, the issue is not whether the statute established, under some circumstances, civil liability for acts by pharmacists; it obviously did not. Rather, the issue is whether, in defining public policy in this state, our Legislature set forth factors which are relevant to determining whether our courts should find that a common-law duty arises. See *Valcaniant*, 470 Mich at 86. Although we are obligated under the Michigan Court Rules to follow cases published since 1990, in light of the amendment of MCL 333.7333 by 2017 PA 251, I think our Supreme Court should, for the reasons stated, consider the validity of *Kintigh* and other cases which preclude, as a matter of law, pharmacist liability for filling facially valid prescriptions for a controlled substance written by a physician. Our Supreme Court has never considered this issue, and the newly enumerated statutory factors could alter the conclusion this Court has reached in *Kintigh* and other cases.

III.

I am not calling for a conflict panel, as I am not stating that consideration of the authorities I cite, especially without the benefit of full briefing on the parties' behalf, would necessarily cause me to diverge from *Kintigh*. See MCR 7.215(J)(2). But, for the reasons stated, I hope that our Supreme Court will grant leave, and consider whether in light of the state and federal authorities cited, " 'the burdens and consequences of imposing a duty and the resulting liability for breach,' " *Valcaniant*, 470 Mich at 86, quoting *Buczkowski*, 441 Mich at 101 n 4, together with all of the other factors set forth by *Valcaniant*, would support liability in this case.

/s/ Jonathan Tukel