*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL ABBAS,

        Plaintiff-Appellant,

v

DTE ENERGY AND LECOM INC,

        Defendants-Appellees,

and

MICHIGAN MILLERS INSURANCE,

        Defendant.

UNPUBLISHED
September 18, 2025
10:16 AM

No. 370668
Wayne Circuit Court
LC No. 22-008538-NO

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

PER CURIAM.

Plaintiff, Michael Abbas, appeals by right the trial court's order granting defendants, DTE Energy (DTE) and Lecom, Inc. (Lecom), summary disposition under MCR 2.116(C)(10) (no dispute of material fact). Because we conclude that plaintiff has not raised a genuine issue of material fact on causation, we affirm.

## I. BACKGROUND AND FACTS

DTE contracted with Lecom to upgrade crossarms—the wooden arms on the top of electrical poles—in the area outside plaintiff's employer, Cherry Hill Motors. On the day of the incident that gave rise to this case, Lecom employee Dave Wheelihan and other crewmembers removed a transformer, or B can, from an electrical pole that serviced the business to reach the crossarms.

Wheelihan testified in his deposition that he advised plaintiff about a day before that the work would interrupt the delivery of three-phase (higher voltage) electrical service to plaintiff's business, meaning that larger specialized equipment such as plaintiff's air compressor would not function properly. Wheelihan further testified that plaintiff offered to completely shut off the power, but that Wheelihan did not instruct plaintiff to do so, although he told plaintiff that if

-1-

plaintiff did, he would personally notify plaintiff once the work was completed. Wheelihan explained that plaintiff could choose whether to shut off the power to the air compressor or shut down power to the whole building. In contrast, plaintiff testified at his deposition that Wheelihan told him that the workers would turn off the power themselves and that there would be no power to the building at all once they began their work.

Plaintiff testified that the power stayed on, and he heard a "heavy noise," like the sound of an earthquake or an F-16. He and the other auto shop workers looked around the building for the source, and then heard the sound of an explosion. Plaintiff then saw that the air compressor was on fire, and he went to turn off the power on the main circuit breaker, but the power would not turn off. Meanwhile, Wheelihan and his crew were completing the last phase of the work on the top of the pole when they were notified by a Cherry Hills employee on the ground that there was smoke coming out of the air compressor. At that time, according to Wheelihan, the transformer that supplied three-phase service was offline. Plaintiff explained that he then attempted to turn off the air compressor, but when he touched its handle, he was electrocuted and thrown onto a frame machine where he hit his head. His memory of exactly which component he touched was somewhat fuzzy, because he was running around trying to stop the fire. Indeed, a video capturing the incident shows the air compressor becoming engulfed in flames while plaintiff runs back and forth before going off-camera. Plaintiff alleged that because of the incident, he suffered injuries including numbness on the right side of his body and lasting neurological issues. He then filed this negligence suit against defendants.

Following the incident, DTE's safety team inspected the air compressor and circuit box. They believed that plaintiff touched an illegally wired connection in the circuit box. After reading the incident report, Wheelihan agreed, suspecting that the cause of the incident was improper grounding of the breaker box, because if a breaker box became energized, then the current could go through the person touching it to the ground if there is no proper ground wire. He could not say how a breaker box could have become energized. Wheelihan denied that anything the crew did outside affected the equipment inside Cherry Hill Motors. Plaintiff, by contrast, testified that he believed that defendants were the cause of the electric shock because they added more power, bringing the voltage to 440. Plaintiff surmised that this was the case because of the loud earthquake-like sound that he heard.

Defendants moved in the trial court for summary disposition under MCR 2.116(C)(10), arguing that plaintiff failed to establish a genuine issue of material fact on negligence and that DTE could not be liable for the negligence of its subcontractor, Lecom. In support, defendants presented an expert report from engineer Erik Swonder, which stated that "operating a three phase motor on a single phase power supply is a known condition that results in 'single phasing' and overheating of the motor." The expert concluded that the fire on the compressor was caused by the failure to shut off power to the compressor while the electrical work was being performed. Swonder also observed that photographs of the circuit boxes taken on the day of the incident showed evidence of fuses being removed from the circuit box while it was energized. He further opined that temporary disconnection of the transformer, or B can, would not energize the handle of the air compressor's disconnect switch. Finally, Swonder concluded that "improper electrical contact with an energized live conductor inside an opened electrical enclosure" could not be excluded as the cause of plaintiff's injury. In a separate affidavit, Swonder averred that nothing in his inspection supported plaintiff's assertion that the voltage increased when the transformer

was disconnected, and that disconnecting the transformer could not increase the voltage to 440 under fundamental principles of electrical engineering. In response, plaintiff submitted what he described as his expert's testimony, but the trial court found that the report was inadmissible because it did not include the name of the author, the date, or a signature. Plaintiff's attorney stated that he believed that he had filed a supplemental brief containing "the full expert report," but the court did not see it in the record.

The trial court granted defendants' motion, finding that there was no genuine issue of material fact on negligence because while defendants' expert report supported defendants' position that there was no negligence, plaintiff failed to counter that conclusion given that plaintiff's expert report was inadmissible. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *BC Tile & Marble Co v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). "In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

Summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden*, 461 Mich at 121.

"A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo." *Gequita Shivers v Covenant Healthcare Sys*, 339 Mich App 369, 373; 983 NW2d 427 (2021). "The issue of whether the doctrine of res ipsa loquitur is applicable to a particular case is a question of law." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 19; 930 NW2d 393 (2018).

## III. ANALYSIS

Plaintiff argues that the trial court erred when it granted defendants' motion for summary disposition on the basis that there was no genuine issue of material fact as to negligence. We disagree.

As a preliminary matter, the trial court correctly ruled that plaintiff's expert report was inadmissible. "When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party . . . must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). The trial court must then consider "[t]he affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties" when ruling on the motion. MCR 2.116(G)(5). Such evidence "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6). An affidavit filed in support or opposition to a motion must be made on personal knowledge and show affirmatively that the affiant, if sworn as a witness, can testify regarding its contents. MCR 2.119(B)(1). Such an affidavit must contain an oath or affirmation of the person who has knowledge of the facts stated. See MCR 1.109(D)(3); MCR 2.116(G)(4). "Opinions, conclusionary denials, unsworn averments, and inadmissible hearsay do not satisfy [MCR 2.116(G)(4)]; disputed fact (or the lack of it) must be established by admissible evidence." *SSC Assoc Ltd Partnership v Gen Retirement Sys of Detroit*, 192 Mich App 360, 364; 480 NW2d 275 (1991).

Because plaintiff submitted an "unsworn averment"—a document from an unnamed expert which lacked a notarized signature—its contents were inadmissible and could not support plaintiff's argument that there was a genuine issue for trial. See *id.*; MCR 1.109(D)(3); MCR 2.116(G)(4). Put differently, "an unsigned, unnotarized 'affidavit' is no affidavit at all." *Rataj v City of Romulus*, 306 Mich App 735, 755 n 8; 858 NW2d 116 (2014). Even plaintiff concedes that the trial court ruling was "technically correct." Plaintiff argues instead that the trial court should have further investigated whether plaintiff's supplemental brief had been filed, which plaintiff now says "presumably had the missing signature and notarization." We decline to find an abuse of discretion when the trial court did not receive the supplemental filing and there continues to be no indication in the record that a supplemental brief or notarized expert report was filed. Moreover, even if plaintiff filed the brief, the trial court was not obligated to consider it because supplemental briefs are permitted only by leave, and there is no evidence that plaintiff sought such leave. See MCR 2.116(G)(1)(a)(iv).

Given that plaintiff's expert report cannot be considered, the question is whether the admissible deposition testimony and affidavits demonstrate that there is a genuine issue of material fact as to defendants' negligence. We first consider whether plaintiff survives summary disposition under a res ipsa loquitur theory. Res ipsa loquitur (i.e., the thing speaks for itself) allows a plaintiff to use circumstantial evidence to create " 'at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act.' " *Maiden*, 461 Mich at 127, quoting *Jones v Porretta*, 428 Mich 132, 150; 405 NW2d 863 (1987). To establish a claim under the doctrine of res ipsa loquitur, plaintiff must demonstrate the following conditions:

(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff; and (4) evidence of the true explanation of the event must be more readily accessible to the defendant than to the plaintiff. [*Pugno*, 326 Mich App at 19 (citation omitted).]

"Although plaintiff must establish that the event was of a kind that ordinarily does not occur in the absence of negligence, plaintiff must also produce some evidence of wrongdoing beyond the mere happening of the event." *Id*. at 19-20.

Addressing the first condition, our Supreme Court has held: " '[T]he fact that the injury complained of does not ordinarily occur in the absence of negligence must either be supported by expert testimony or must be within the common understanding of the jury.' " *Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522 (2005), quoting *Locke v Pachtman*, 446 Mich 216, 231; 521 NW2d 786 (1994). Plaintiff's theory is that the malfunctioning of the air compressor could not have occurred without defendants' negligence, and that the compressor received an overvoltage leading to plaintiff's electrocution. But for the jury to understand plaintiff's explanation, they must understand principles of electrical engineering including grounding, phasing, and circuitry. Just as medical knowledge regarding where to place an arterial line or venous catheter was outside the common understanding of the jury in *Woodard*, these principles of electrical engineering are not within the common understanding of the jury. See *id*. As such, plaintiff was required to provide expert testimony. However, he has not done so because his proposed expert report was properly deemed inadmissible. And because plaintiff cannot establish the first condition under the res ipsa loquitur doctrine, he cannot proceed on this theory of negligence. See *Pugno*, 326 Mich at 19.

We turn next to plaintiff's direct-evidence negligence theory. To prove negligence, plaintiff must "show that the defendant owed them a duty, that the defendant breached that duty, that the plaintiff suffered harm, and that the defendant's breach was the proximate cause of the plaintiff's harm." *Marion v Grand Trunk Western R Co*, 513 Mich 220, 226-227; 15 NW3d 180 (2024).

"The existence of a legal duty is a question of law." *Valcaniant v Detroit Edison Co*, 470 Mich 82, 86; 679 NW2d 689. "The duty in a negligence action is broadly 'to conform to the legal standard of reasonable conduct in the light of the apparent risk.' " *Marion*, 513 Mich at 227, quoting *Moning v Alfono*, 400 Mich 425, 443; 254 NW2d 759 (1977). "In determining whether a duty exists, courts examine a wide variety of factors, including the relationship of the parties and the foreseeability and nature of the risk." *Schultz v Consumers Power Co*, 443 Mich 445, 450; 506 NW2d 175 (1993).

To prove breach, a plaintiff must demonstrate that "defendants' conduct in the particular case is below the general standard of care." *Rowland v Independence Village of Oxford, LLC*, 509 Mich 992, 992; 974 NW2d 228 (2022), quoting *Moning*, 400 Mich at 438-439. Whether breach occurred is a question of fact for the jury. *Id*.

Proximate cause " 'involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.' " *Ray v Swager*, 501 Mich

52, 63; 903 NW2d 366 (2017), quoting *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). To be a proximate cause, the negligent conduct must have been both a but-for cause of the plaintiff's injury, or cause-in-fact, and the plaintiff's injury must have been a natural and probable result of the negligent conduct, also called legal causation. *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496; 791 NW2d 853 (2010). "While legal causation relates to the foreseeability of the consequences of the defendant's conduct, the cause-in-fact prong 'generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred.' " *Id.*, quoting *Skinner*, 445 Mich at 163. The negligent act must be "*a* proximate cause," not "*the* proximate cause." *O'Neal*, 487 Mich at 497 (quotation marks and citation omitted, emphasis added). Proximate cause is generally a question of fact for the jury, *Helmus v Dep't of Transp*, 238 Mich App 250, 256; 604 NW2d 793 (1999), but at the summary disposition stage a plaintiff must produce non-speculative evidence of proximate cause that would allow the jury to find in the plaintiff's favor. *Skinner*, 445 Mich at 174-175.

In this case, Lecom owed plaintiff a duty. "Electric companies must exercise ordinary care to guarantee that equipment is kept in a reasonably safe condition." *Schultz*, 443 Mich at 454. Although Lecom is a contractor rather than an electric utility company, there is no dispute that DTE hired it to perform electrical maintenance on DTE's behalf. The obligation to "reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazardous defects" "extends to persons within a foreseeable scope of the risk." *El-Jamaly v Kirco Manix Constr, LLC*, 514 Mich 263, 291-294; 22 NW3d 377 (2024) (quotation marks and citations omitted). To determine whether a duty was owed, we consider whether Lecom "should have foreseen the probability that injury might result from any reasonable activity done on the premises for business, work, or pleasure." *Schultz*, 443 Mich at 453. Defendants' own expert stated that "operating a three phase motor on a single phase power supply is a known condition that results in 'single phasing' and overheating of the motor," demonstrating that a fire was foreseeable as a result of Lecom's activities. Therefore, because Lecom was conducting maintenance that affected electrical power to plaintiff's employer's property, and the possibility of some injury was foreseeable, it owed plaintiff a duty of ordinary care. See *id.* at 452 ("Those engaged in transmitting electricity are bound to anticipate ordinary use of the area surrounding the lines and to appropriately safeguard the attendant risks").

On the question of breach, plaintiff has demonstrated that there is at least a genuine dispute of material fact as to whether Lecom's conduct fell below the standard of care. Lecom terminated the delivery of three-phase power to the premises without ensuring that the air compressor was turned off. Although Wheelihan testified that he told plaintiff in advance that he would need to stop using the air compressor, plaintiff testified that Wheelihan told him that the Lecom workers would turn off the power themselves before beginning their work. A jury could find that Lecom's conduct breached its duty of care.

As for proximate cause, there is evidence from which a jury could determine that Lecom's activity was a cause-in-fact of plaintiff's injury. See *O'Neal*, 487 Mich at 496. Plaintiff's injury occurred when he touched electrical equipment in an attempt to turn off the air compressor, which was engulfed in flames. Again, given that Lecom's transformer work interrupted three-phase electrical service, and that defendants' expert testified that "operating a three phase motor on a single phase power supply is a known condition that results in . . . overheating of the motor," there is support for the inference that the fire would not have occurred but for Lecom's work. In turn,

-6-

this supports the inference that had Lecom properly ensured the disconnection of plaintiff's power or three-phase equipment before beginning the electrical work, plaintiff would not have touched the electrical component that allegedly caused his injuries when he sought to put out the fire. Therefore, there is evidence in the record from which a jury could conclude that more likely than not, but for Lecom's conduct, plaintiff's injuries would not have occurred. See *Skinner*, 445 Mich at 164-165.

The crux of the dispute is whether plaintiff has raised a genuine issue of material fact on the legal causation prong of proximate cause. That is, the question is whether Lecom should be held legally responsible for plaintiff's injury as "a natural and probable result of the negligent conduct." *O'Neal*, 487 Mich at 496. If plaintiff's injury had been burns from the fire that resulted from the overheating of the air compressor, it is likely that legal causation could be established by proof that Lecom turned off three-phase power without taking adequate steps to ensure that the air compressor was turned off, as defendants' own expert report indicated that was how the fire began. But here, plaintiff's theory of the case is quite different, and in a way that matters. According to plaintiff, defendants' electrical work sent *high voltage* through the three-phase line, resulting in an oversurge of power that *electrocuted* plaintiff, causing lasting injury. Plaintiff attempts to support this theory with his own testimony that he believes that the workers added voltage and that he was shocked with 440 volts. However, plaintiff's testimony lacks foundation and does not appear to be made on the basis of personal knowledge or electrical expertise, but instead on an inference that plaintiff has personally drawn from the sound that plaintiff heard. And as discussed, there is no admissible expert testimony supporting this theory of how plaintiff was electrocuted.[1] "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Skinner*, 445 Mich at 164. Here, we must conclude that plaintiff's theory is simply too speculative to support a genuine issue of material fact on causation.

For this reason, plaintiff has not supported his claim with sufficient evidence from which a reasonable jury could find Lecom liable for negligence. Consequently, the trial court properly granted summary disposition to defendants.[2]

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Daniel S. Korobkin

---

[1] To the extent that plaintiff relies on the inadmissible expert report, "this Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002).

[2] Because of our conclusion that there is no genuine issue of material fact on causation, we need not address plaintiff's arguments regarding DTE's liability for Lecom's alleged negligence.