*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHAREEF EL-JAMALY,

        Plaintiff-Appellee,

v

KIRCO MANIX CONSTRUCTION, LLC, and
KIRCO DEVELOPMENT, LLC,

        Defendants-Appellees,

and

KIRCO-OM PLYMOUTH, LLC, OERLIKON
METCO (US), INC., GHAFARI ASSOCIATES,
LLC, GHAFARI, INC., NATIONAL SAFETY
RESOURCE CENTER, LLC, CHRISTOPHER
STREB, and DTE ENERGY COMPANY,

        Defendants,

and

DTE ELECTRIC COMPANY,

        Defendant-Appellant.

UNPUBLISHED
September 1, 2022

No. 355402
Wayne Circuit Court
LC No. 18-011226-NO

-1-

SHAREEF EL-JAMALY,

       Plaintiff-Appellee,

v

KIRCO MANIX CONSTRUCTION, LLC, and
KIRCO DEVELOPMENT, LLC,

       Defendants-Appellees,

and

KIRCO-OM PLYMOUTH, LLC, GHAFARI
ASSOCIATES, LLC, GHAFARI, INC.,
NATIONAL SAFETY RESOURCE CENTER, LLC,
CHRISTOPHER STREB, DTE ENERGY
COMPANY, and DTE ELECTRIC COMPANY,

       Defendants,

and

OERLIKON METCO (US), INC.,

       Defendant-Appellant.

No.   355703
Wayne Circuit Court
LC No.   18-011226-NO

SHAREEF EL-JAMALY,

        Plaintiff-Appellee,

v

KIRCO MANIX CONSTRUCTION, LLC, and
KIRCO DEVELOPMENT, LLC,

        Defendants-Appellants,

and

KIRCO-OM PLYMOUTH, LLC, OERLIKON
METCO (US), INC., GHAFARI ASSOCIATES,
LLC, GHAFARI, INC., NATIONAL SAFETY
RESOURCE CENTER, LLC, CHRISTOPHER
STREB, DTE ENERGY COMPANY, and DTE
ELECTRIC COMPANY,

        Defendants.

No. 355932
Wayne Circuit Court
LC No. 18-011226-NO

-3-

SHAREEF EL-JAMALY,

        Plaintiff-Appellee,

v

KIRCO MANIX CONSTRUCTION, LLC, and
KIRCO DEVELOPMENT, LLC,

        Defendants-Appellees,

and

KIRCO-OM PLYMOUTH, LLC, OERLIKON
METCO (US), INC., GHAFARI ASSOCIATES,
LLC, GHAFARI, INC., DTE ENERGY
COMPANY, and DTE ELECTRIC COMPANY,

        Defendants,

and

NATIONAL SAFETY RESOURCE CENTER, LLC,
and CHRISTOPHER STREB,

        Defendants-Appellants.

No. 356542
Wayne Circuit Court
LC No. 18-011226-NO

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

        In these consolidated[1] appeals, defendants-appellants appeal by leave granted the orders of the trial court denying their respective motions for summary disposition under MCR 2.116(C)(10) of plaintiff's claims relating to injuries he sustained while working at a construction site. In each of the consolidated appeals, we reverse the decision of the trial court and remand for entry of summary disposition in favor of the respective defendants.

---

[1] *El-Jamaly v Kirco Manix Constr, LLC*, unpublished order of the Court of Appeals, entered May 6, 2021 (Docket No. 356542).

## I. FACTS

On November 13, 2017, plaintiff was seriously injured while working at a construction site in Plymouth Township, Michigan. Plaintiff was employed by Merlo Construction Company, Inc. (Merlo), a subcontractor performing concrete work as part of the construction project. On that day, Merlo was pouring concrete for a driveway approach at the site, and plaintiff was working at the construction site as a general laborer. Plaintiff was carrying a long-handled concrete-smoothing tool called a "bull float" vertically from the worksite to the Merlo truck when the tool either touched the overhead power line or came close enough to the power line that plaintiff was electrocuted. Plaintiff sustained severe electrical injuries that resulted in the amputation of his right arm above the elbow and the amputation of his left leg below the knee; he also suffered a traumatic brain injury when he fell after being electrocuted.

The power line involved was 24 feet and 4 inches above the ground, which was higher than the required vertical clearance height of 18 feet and 7 inches. During his deposition, plaintiff testified that he knew that there were power lines at the construction site, but did not recall seeing any warning signs regarding the overhead wires. He further testified that he did not know whether he touched the overhead wire with the bull float.

The bull float consisted of four interlocking six-foot segments that were clipped together through spring-push buttons that connected the component parts into an approximately 23½-foot tool. The bull float had a conductive aluminum handle, rather than a nonconductive fiberglass handle. The Merlo project foreman testified that Merlo instructed its workers to carry long-handled tools such as bull floats horizontally; Merlo workers also testified that a bull float should be carried horizontally rather than vertically, or that alternatively the bull float should be disassembled before being carried.

The construction site property was owned by defendant Kirco-OM Plymouth, LLC (Kirco-OM). Defendant Kirco Manix Construction, LLC (Kirco Manix) was the general contractor and construction manager of the construction project, and defendant Kirco Development, LLC (Kirco Development) was the project planner and developer. A commercial building was being constructed on the site for defendant Oerlikon Metco (US), Inc (Oerlikon), which had a long-term lease agreement with Kirco-OM for the building, but the term of the lease had not begun and Oerlikon was not in possession of the building that was under construction on the day of the accident. Defendant National Safety Resource Center, LLC (NSRC) and its principal, defendant Christopher Streb, were safety consultants for plaintiff's employer, Merlo. Defendant DTE Electric Company (DTE) is the utility company that owned, controlled, and maintained the overhead power lines on the property. Plaintiff initiated this negligence action, asserting various theories of liability against defendants. DTE, Oerlikon, Kirco Manix, Kirco Development, NSRC, and Streb moved for summary disposition of plaintiff's claims. The trial court denied defendants' motions, and these appeals followed.[2]

---

[2] The other defendants were dismissed by the trial court and are not involved in these appeals.

## II. DISCUSSION

### A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny a motion for summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). We also review de novo as a question of law whether a defendant owed the plaintiff a duty of care, *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 243; 964 NW2d 50 (2020), and the applicability of a legal doctrine, such as the common work area doctrine. See *James v Alberts*, 464 Mich 12, 14; 626 NW2d 158 (2001).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). To defeat a motion for summary disposition, the plaintiff "must do more than present evidence that the defendant's conduct possibly caused the injury," but rather must present "substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *McMaster v DTE Energy Co*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 162076); slip op at 11 (quotation marks and citation omitted).

### B. DOCKET NO. 355402

In Docket No. 355402, DTE contends that the trial court erred by denying its motion for summary disposition because DTE did not owe a legal duty to plaintiff, and therefore plaintiff's claim of negligence against DTE must fail. We agree.

In his second amended complaint, plaintiff alleges that DTE was negligent because DTE knew about the construction project and denied a request to cover the power lines or to take other actions to protect against the dangers posed by the power lines. Plaintiff alleges that DTE was negligent because it failed to initiate, convene, competently conduct, and follow up on meetings regarding the construction project, failed to protect workers, including plaintiff, from unreasonable risks of harm posed by the power lines, and failed to bury, raise, relocate, de-energize, cover, or warn about the power lines.

To set forth a prima facie case of negligence, a plaintiff must prove that the defendant owed a legal duty to the plaintiff, the defendant breached the legal duty by failing to exercise ordinary care in performing that duty, and the plaintiff suffered damages proximately caused by the defendant's breach. *McMaster*, ___ Mich at ___; slip op at 5. The threshold question in a negligence action is whether the defendant owed a legal duty to the plaintiff, *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004), which is a question of law to be decided by the court. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659; 822 NW2d 190 (2012). If

the defendant does not owe a legal duty to the plaintiff there can be no breach and no causation, and thus no liability in negligence, entitling the defendant to summary disposition. See *id*. at 660.

"Duty is the legal obligation to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm." *Composto v Albrecht*, 328 Mich App 496, 499; 938 NW2d 755 (2019). Generally, there is no duty that requires one person to protect or aid another person. *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988). However, every person performing an undertaking has a duty to use due care not to endanger other persons and their property. *McMaster*, ___ Mich at ___; slip op at 6. "This rule of the common law arises out of the concept that every person is under the general duty to so act, or to use that which he controls, as not to injure another." *Id*., quoting *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967). However, our Supreme Court in *In re Certified Question from Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498; 740 NW2d 206 (2007), explained that although *Clark* makes statements suggesting a broad general duty,

> [T]hese statements immediately follow the statement that "[a]ctionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." [*Clark*, 379 Mich ] at 260-261. . . . Therefore, contrary to plaintiffs'. . . suggestion, *Clark* does not stand for the proposition that everybody owes a duty to everybody else. [*In re Certified Question*, 479 Mich at 509 n 10.]

A duty of care may arise by statute, by a contractual relationship, or under the common law. *Hill*, 492 Mich at 660-661. Special relationships that may give rise to a duty include owners and occupiers of land and their invitees, *Bailey v Schaaf*, 494 Mich 595, 604; 835 NW2d 413 (2013), employers and employees, common carriers and passengers, and innkeepers and guests. *Williams*, 429 Mich at 499. "These special relationships are predicated on an imbalance of control, where one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself." *Bailey*, 494 Mich at 604 (emphasis, quotation marks, and citation omitted). The special relationship "must be sufficiently strong to require the defendant to take action to benefit the injured party." *Murdock v Higgins*, 454 Mich 46, 54; 559 NW2d 639 (1997). When no relationship exists between the parties, no duty can be imposed. *In re Certified Question*, 479 Mich at 507.

"Factors relevant to the determination whether a legal duty exits include the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Hill*, 492 Mich at 661 (quotation marks and citation omitted). The most important considerations in determining whether a duty exists are the relationship of the parties and the foreseeability of the harm; if either of those two factors is lacking, then it is unnecessary to consider the remaining factors. *Id*. "In other words, before a duty can be imposed, there must be a relationship between the parties and the harm must have been foreseeable." *Id*. (Quotation marks and citation omitted).

Our Supreme Court has decided several cases addressing the extent of the legal duty owed by an electric utility, an examination of which is useful here. In *Schultz v Consumers Power Co*, 443 Mich 445, 449; 506 NW2d 175 (1993), the plaintiff's decedent was fatally electrocuted while painting the exterior of a house. The plaintiff's decedent was using a 27-foot aluminum extension

ladder when electricity allegedly arced from an uninsulated wire located near the house, electrocuting the decedent. *Id.* at 448. The plaintiff sued the power company, alleging that the power company was negligent in maintaining the wire. *Id.* at 448-449. A jury found the power company negligent and awarded the plaintiff $750,000. *Id.* at 449. This Court reversed, determining that the power company did not owe a duty to the decedent. *Id.* Our Supreme Court reversed this Court's decision, holding that the relationship between the power company and the decedent was sufficient to impose a duty under those circumstances, and stating that "a power company has an obligation to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects." *Id.* at 451. Regarding foreseeability, the Court stated that "a reasonable person could certainly anticipate that a painter could be electrocuted if his aluminum ladder came close to, or touched, a pitted, corroded and frayed electric wire," and "a reasonable person could confidently conclude that this event would cause serious injury or death to the painter." *Id.* at 452. The Court reasoned:

> Those engaged in transmitting electricity are bound to anticipate ordinary use of the area surrounding the lines and to appropriately safeguard the attendant risks. The test to determine whether a duty was owed is not whether the company should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable activity done on the premises for business, work, or pleasure. Here, Consumers Power should have realized that homeowners generally maintain their homes. This may include washing windows, cleaning troughs, repairing the roof, cleaning gutters, and, certainly, painting. Considering the proximity of the uninsulated primary wire to the house (roughly fifteen horizontal feet and twenty-four vertical feet from the ground), it was foreseeable that someone making repairs could be injured by a dilapidated wire. [*Id.* at 452-453.]

This duty, however, does not include warning or guarding against all possible contacts with elevated power lines. In *Groncki v Detroit Edison Co*, 453 Mich 644, 649; 557 NW2d 289 (1996) (opinion by BRICKLEY, C.J.), our Supreme Court rejected negligence claims in three incidents when the plaintiffs came into contact with elevated power lines that were not alleged to be defective. The Court held that in each incident the defendant power company could not have foreseen that equipment could come into contact with its maintained elevated power lines.

In the first of the three cases, the plaintiff, Theodore Parcher, was electrocuted when the 29-foot high scaffold he was moving using a forklift at a construction site came into contact with a power line. *Id.* at 650. The power lines were 65 feet from the building and 35 feet above the ground. *Id.* Edison, which owned and operated the lines, knew about the ongoing construction. *Id.* In the second of the three cases, the plaintiff, Gerald Groncki, was injured while moving a ladder that contacted an uninsulated overhead power line that was 21 feet high and 14½ feet from the building. *Id.* In the third case, the plaintiff's decedent was unloading materials at a construction site when the boom of his truck touched the overhead power lines, killing him. The uninsulated power lines were 12 feet from the house and 26 feet high. *Id.* at 652-653. The power company was aware of the construction, but refused to insulate or move the power lines unless the cost of doing so was reimbursed. *Id.*

Chief Justice Brickley's lead opinion in *Groncki* explained that "[t]he scope of the duty owed by electrical companies to move, insulate or de-energize overhead power lines is a question of foreseeability." *Id*. at 654, citing *Schultz*, 443 Mich at 452. "Utility companies, particularly electric companies are charged with a duty to protect against foreseeable harm." *Groncki*, 453 Mich at 654 (opinion by BRICKLEY, C.J.), citing *Schultz*, 443 Mich at 452. With respect to the allegations in two of the cases in *Groncki* that Edison owed a duty to warn of the presence of the power lines, the lead opinion in *Groncki* stated that "there is no duty to warn someone of a risk of which that person is aware. Specifically, there is no duty to warn of known overhead power lines." *Groncki*, 453 Mich at 656 (opinion by BRICKLEY, C.J.) (citation omitted). "The duty to warn only arises when there is a foreseeable victim. Thus, this duty, like the duty to inspect and repair, does not arise where it is not foreseeable to Edison that the plaintiff would come into harmful contact with the wires." *Id*. at 656-657.

The Court in *Groncki* also discussed the Court's earlier decision in *Koehler v Detroit Edison Co*, 383 Mich 224; 174 NW2d 827 (1970), in which the plaintiff was electrocuted when the crane on which he was riding at a construction site came into contact with overhead power lines. The Court in *Koehler* upheld the trial court's determination that the electrical company owed no duty to the plaintiff, reasoning that "[t]he mere fact that Detroit Edison knew a building was under construction near its power line and that, from time to time, mobile cranes were being brought upon the premises to be used in construction work, would not, standing alone, create a duty upon Detroit Edison to remove the charge, insulate the line, or notify the parties of a dangerous condition." *Groncki*, 453 Mich at 655 (opinion by BRICKLEY, C.J.), quoting *Koehler*, 383 Mich at 231.

With respect to Parcher's case, the lead opinion in *Groncki* stated that Edison owed no duty to protect Parcher. *Id*. at 657. "As in *Koehler*, Edison knew that there was ongoing construction, but had no reason to know that any high profile machinery would be used near its power lines" and the case did not involve an allegation of inadequately maintained power lines. With respect to Groncki's case, the lead opinion concluded that Edison did not owe him a duty to inspect, repair, insulate, move, or place safety barriers around the power lines. *Id*. at 658. The lead opinion found Groncki's case distinguishable from *Schultz*:

> In *Schultz*, the probability of injury was based upon a frayed line that had been placed next to a preexisting structure. Further, the plaintiff in *Schultz* was a homeowner making repairs to his own home. In this case, there is no evidence suggesting that the line was in poor condition or was not properly maintained. Further, Mr. Groncki was not a homeowner unfamiliar with the dangers of electric lines. Rather, he was an experienced workman who was fully aware of the presence of the wires. Indeed, he warned a coworker to take exceptional care around the power lines. Thus, it was not foreseeable that he would ignore his own warnings and attempt to move the fully extended metal ladder himself, and Edison owes no duty to Mr. Groncki. [*Id*. at 658-659.]

Similarly, regarding the third case in *Groncki*, the lead opinion determined that the plaintiff's injury was not foreseeable to Edison and that Edison thus owed no duty to move, insulate, de-energize, or warn about the power lines. *Id*. at 659. "[I]t was not foreseeable to Edison that an experienced, skilled workman would disregard clear instructions and operate his delivery

vehicle directly beneath power lines. Thus, no duty arose on the part of Edison to [Bohnert]." *Id*. at 660.

In *Valcaniant v Detroit Edison Co*, 470 Mich 82, 84; 679 NW2d 689 (2004), the Court determined that as in *Groncki*, the plaintiff's injuries in *Valcaniant* were not foreseeable and that Edison owed the plaintiff no legal duty. The plaintiff owned a gravel lot on which he operated a used-car business. The plaintiff was injured when a dump truck on the lot severed a nearby overhead power line owned by Edison. *Id*. at 84-85. Because the ground was wet, electricity traveled through the truck and the ground to the plaintiff, who was standing nearby. *Id*. Edison's sensor automatically detected the severed line and momentarily stopped the flow of electricity, but was designed to restart the flow of electrical current three times within a six-second period to determine if a fault existed. The sensor operated as designed, and the plaintiff was injured by the sensor completing its cycles. The plaintiff sued Edison, arguing that Edison owed him a legal duty to deenergize the severed power line immediately. *Id*. The trial court denied Edison summary disposition. This Court reversed, holding that Edison owed no legal duty to the plaintiff. *Id*. Our Supreme Court affirmed this Court's opinion and remanded to the trial court for entry of summary disposition in favor of Edison. *Id*. at 84, 88. The Court stated:

> Edison had no obligation to anticipate that the dump truck operated under plaintiff's direction would sever an overhead power line that was suspended more than twenty-five feet above the ground, much less that plaintiff would be standing on wet ground several feet away. As a result, Edison had no legal duty to anticipate that plaintiff might be injured when the sensor device briefly re-energized the line, as it was designed to do, or to take other steps to prevent plaintiff's injury. [*Id*. at 87-88.]

In this case, as in *Valcaniant* and *Groncki*, plaintiff does not allege that the wire involved in plaintiff's accident was defective. Rather, plaintiff alleges that DTE had a duty to move, de-energize, insulate, or warn about the power lines in light of ongoing construction near the power lines. As in *Valcaniant* and *Groncki*, however, plaintiff's accident was unforeseeable, and DTE thus had no duty to take the actions plaintiff argues should have been taken.

Plaintiff was employed by Merlo, which was performing concrete work for a driveway from the street to the parking lot, and the section of power line in question was near the street. Although concerns about the power lines had been brought to DTE's attention several months earlier, those concerns related to sections of the power lines near the building.[3] There is no indication that any concerns expressed to DTE were focused on the specific area where plaintiff was injured or that concerns were raised specifically about the performance of concrete work under the power lines in that area. On the date of the accident, the power line involved in plaintiff's

---

[3] The so-called "Carnwath incident" occurred in April 2017 when a high-reaching excavating machine operated by Carnwath Excavating severed a power line near the building site. The incident occurred in an area distant from the location of plaintiff's accident, and no injuries occurred. That incident did not provide notice to DTE of an increased likelihood that a person carrying a handheld tool near the street was likely to contact a power line.

electrocution was 24 feet and 4 inches high, in excess of the required vertical clearance of 18 feet and 7 inches.

Critical to the lack of foreseeability of plaintiff's accident is that he chose to raise a fully extended 23½-foot aluminum bull float vertically underneath the power lines. Plaintiff's job duties required him to transport the bull float back to the Merlo truck after the tool had been used by other Merlo workers. Performing this task did not require plaintiff to raise the tool vertically. Rather, other Merlo employees testified that a bull float should not be carried vertically, but should be carried horizontally or taken apart into its four segments before moving it. Plaintiff testified that he was familiar with disassembling the bull float and also was generally aware of the power lines at the construction site. There is also evidence indicating that he had been warned about the power lines by Kirco Manix during a safety-orientation meeting.[4]

Further, DTE had no reason to know that Merlo would equip its employees with conductive-handled bull floats for use in proximity to overhead power lines, in contravention of a MIOSHA regulation.[5] See Mich Admin Code, R 408.42520(3). Because DTE reasonably could not have foreseen that a worker would raise a 23½-foot fully extended aluminum bull float vertically into the air underneath the power lines, no duty arose on the part of DTE to protect plaintiff by moving, insulating, de-energizing, or erecting safety barricades around the power lines. See *Hill*, 492 Mich at 661 (if the harm is not foreseeable, then no duty can be imposed). Nor did DTE owe a duty to warn plaintiff about the power lines, given that the incident was not foreseeable to DTE and that plaintiff knew of the power lines. *Groncki*, 453 Mich at 656-658 (opinion by BRICKLEY, C.J.); see also *Hill*, 492 Mich at 669 (noting that there is no duty to warn someone of a risk of which that person is aware).

A review of the record suggests that the trial court conflated the element of duty with the distinct element of breach of duty, suggesting that the determination of duty was a question of fact for the jury. As noted, the existence of a legal duty is a question of law for the court to decide. *Valcaniant*, 470 Mich at 86. By contrast, the element of breach of duty is generally for the trier of fact to determine. *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992).

---

[4] But this evidence regarding the safety-orientation meeting is not critical to the analysis in DTE's appeal. Plaintiff's admitted awareness of the power lines would preclude a conclusion that DTE owed a duty to warn him about the power lines. See *Groncki*, 453 Mich at 656 (opinion by BRICKLEY, C.J.) ("[T]here is no duty to warn someone of a risk of which that person is aware. Specifically, there is no duty to warn of known overhead power lines.") (Citation omitted). Also, the lack of foreseeability of the incident to DTE is itself dispositive of the duty analysis.

[5] After the accident, Merlo was cited and fined by the Department of Licensing and Regulatory Affairs for two regulatory violations under the Michigan Occupational Safety and Health Act (MIOSHA), MCL 408.1001 *et seq.*, for allowing plaintiff to work with a metal-handled bull float too close to the power lines and for the use of uninsulated bull floats underneath the power lines. Kirco Manix was cited and fined for two violations for allowing plaintiff to work with a metal-handled bull float close to the power lines and for failing to reinstall a blown-over "danger" sign that had been installed to alert workers of the hazard of the overhead power lines.

Similarly, the record suggests that the trial court conflated the question of the standard of care with the distinct question whether a duty exists. See also *Valcaniant*, 470 Mich at 86 n 4 ("Duty concerns whether a defendant is under any legal obligation to act for the benefit of the plaintiff. This concept should be distinguished from the standard of care, which, in negligence cases, always requires reasonable conduct.") (Citation and emphasis omitted).

In this case, plaintiff's accident was not foreseeable to DTE, and thus, no duty arose on the part of DTE to move, de-energize, insulate, or erect barricades around the power lines. Given the lack of foreseeability as well as plaintiff's knowledge of the power lines, no duty arose on the part of DTE to warn plaintiff about the power lines. Absent a duty, DTE was entitled to summary disposition.

## C. DOCKET NO. 355703

In Docket No. 355703, Oerlikon contends that the trial court erred by denying its motion for summary disposition[6] of plaintiff's claim of ordinary negligence because Oerlikon did not owe a legal duty to plaintiff. Oerlikon also contends that the trial court erred by denying its motion for summary disposition of plaintiff's claim of premises liability. We agree.

As discussed, to establish a prima facie case of negligence a plaintiff must establish that the defendant owed a legal duty to the plaintiff, the defendant breached that duty, and the plaintiff suffered damages proximately caused by the defendant's breach of its duty. *McMaster*, ___ Mich at ___; slip op at 5. The threshold question is whether the defendant owed a legal duty to the plaintiff. *Fultz*, 470 Mich at 463, which is a question of law to be decided by the court. *Hill*, 492 Mich at 659. If the defendant does not owe a legal duty to the defendant there can be no breach and no causation, and thus no liability in negligence, entitling the defendant to summary disposition.

In this case, plaintiff did not establish that Oerlikon owed a legal duty to plaintiff. There was no relationship—special or otherwise—between plaintiff and Oerlikon. At the time of plaintiff's accident, Oerlikon was merely the future tenant of the building that was under construction. Oerlikon did not own the property, nor did Oerlikon manage the construction site or supervise safety at the site. The parties do not dispute that Kirco Manix was the general contractor and construction manager, and that plaintiff was an employee of Merlo, a subcontractor. Although Oerlikon used a trailer on the construction site and its representative was regularly present at the construction site, the record suggests that his role was merely monitoring the construction progress. Because there was no relationship between plaintiff and Oerlikon, Oerlikon did not owe a duty to plaintiff and Oerlikon was entitled to summary disposition on plaintiff's ordinary negligence claim. See *Hill*, 492 Mich at 660-661. In addition, plaintiff failed to establish that the accident

---

[6] Oerlikon moved for summary disposition under MCR 2.116(C)(8) and (10), but its motion was based in part on evidence outside the pleadings and the record suggests that the trial court considered evidence outside the pleadings when ruling on the motion. We therefore review the trial court's ruling as one under MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

-12-

was foreseeable to Oerlikon; Oerlikon could not foresee the actions of Merlo and plaintiff that led to plaintiff's electrocution. Accordingly, Oerlikon was entitled to summary disposition.

Oerlikon also was entitled to summary disposition of plaintiff's claim of premises liability because Oerlikon did not possess or control the premises at the time of plaintiff's accident. When a plaintiff alleges injuries arising from a dangerous condition on the land, the claim is one of premises liability rather than ordinary negligence. *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). In a premises liability action, as in any negligence action, the plaintiff must establish the elements of negligence. *Goodwin v Northwest Michigan Fair Ass'n*, 325 Mich App 129, 157; 923 NW2d 894 (2018). Unlike ordinary negligence, however, premises liability arises from the defendant's possession and control of the land. See *Finazzo v Fire Equip Co*, 323 Mich App 620, 632-633; 918 NW2d 200 (2018).

The initial inquiry when analyzing a claim of premises liability is the duty owed by the possessor of the premises to a person entering the premises. *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012). Here, the parties do not dispute that plaintiff was an invitee. The possessor of land owes an invitee the duty to use reasonable care to protect the invitee from an unreasonable risk of harm posed by a dangerous condition on the premises. *Estate of Livings v Sage's Investment Group, LLC*, 507 Mich 328, 337; 968 NW2d 397 (2021). The possessor of the premises breaches that duty of care when he or she knows or should know of a dangerous condition on the premises of which the invitee is unaware, and fails to fix, guard against, or warn the invitee of the defect. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016).

If a defendant did not possess and control the premises, premises liability cannot be asserted. *Finazzo*, 323 Mich App at 632-633. A possessor of premises has been defined as (1) a person who occupies land with intent to control it, or (2) a person previously occupying land with intent to control it when no one subsequently occupies the land with intent to control it, or (3) a person entitled to immediate occupation of the land if no other person possesses the land under (1) or (2). *Merritt v Nickelson*, 407 Mich 544, 552; 287 NW2d 178 (1980). "[P]ossession for purposes of premises liability does not turn on a theoretical or impending right of possession, but instead depends on the actual exercise of dominion and control over the property." *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 661; 575 NW2d 745 (1998).

In this case, Oerlikon did not possess or control the premises at the time of plaintiff's accident. Oerlikon was to be a future tenant of the building that was under construction; Oerlikon had signed a lease agreement with the owner, Kirco-OM, but the term of the lease did not begin until April 2018, more than four months after plaintiff's accident. Oerlikon's project manager was regularly at the construction site to monitor the progress of the project, but used a trailer provided by Kirco Manix, the general contractor and construction manager. The project manager for Kirco Manix agreed that Oerlikon had no role or responsibility with respect to supervising or training workers. A party's mere presence or performance of limited activities on a parcel of land does not by itself establish possession and control. See, e.g., *Morelli v Madison Heights*, 315 Mich App 699, 704; 890 NW2d 878 (2016) (although the defendant regularly mowed the grass on a berm located in a public right-of-way, he lacked possession of the berm for purposes of premises liability). In the present case, although Oerlikon had a regular presence at the construction site, there is no evidence that it possessed and controlled the property during the construction project.

-13-

Therefore, plaintiff may not recover against Oerlikon for premises liability, and Oerlikon therefore was entitled to summary disposition.

## D. DOCKET NO. 355932

In Docket No. 355932, Kirco Manix and Kirco Development contend that the trial court erred by denying Kirco Manix summary disposition of plaintiff's claims under the common work area doctrine and erred by denying Kirco Development summary disposition[7] of plaintiff's claim of negligence. We agree.

## 1. KIRCO MANIX

At common law, a general contractor generally could not be held liable for the negligence of independent subcontractors and their employees. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 48; 684 NW2d 320 (2004). Our Supreme Court created an exception to this general rule, however, known as the common work area doctrine. *Id*. Under the common work area doctrine, a general contractor can be held liable for the negligence of a subcontractor if the plaintiff proves that (1) the defendant general contractor failed to take reasonable steps within its supervisory and coordinating authority, (2) to guard against readily observable and avoidable dangers, (3) thereby creating a high degree of risk to a significant number of workers, (4) in a common work area. *Id*. at 54. Failure to establish any one of the elements of the common work area doctrine is fatal to a plaintiff's claim under the doctrine. *Id*.

In considering the elements of the common work area doctrine, it is necessary to identify the danger that allegedly created the high degree of risk that the general contractor allegedly had responsibility to take reasonable steps to guard against. See *Latham v Barton Malow Co*, 480 Mich 105, 113-114; 746 NW2d 868 (2008). In this case, plaintiff seeks to define the relevant danger broadly as the mere presence of the overhead power lines at the construction site. However, the presence of power lines is a common condition. See *Groncki*, 453 Mich at 661 (opinion by BRICKLEY, C.J.). And here, the power line involved in plaintiff's accident was at a proper height and in good repair. The danger arose only when plaintiff raised a high-reaching conductive tool under the power lines. Thus, the pertinent danger for the purpose of the common work area doctrine is not the power line itself but the risk of electrocution from use near the power line of high-reaching conductive tools or equipment capable of reaching the power lines. See *Alderman v JC Dev Communities, LLC*, 486 Mich 906, 906 (2010) (defining the relevant danger as "the risk of electrocution from a subcontractor's crane coming into contact with power lines above the construction site").

Having identified the alleged danger, we conclude that plaintiff failed to establish a genuine issue of material fact regarding the third element, i.e., that the danger created a high degree of risk

---

[7] Although Kirco Manix and Kirco Development moved for summary disposition under MCR 2.116(C)(8) and (10), the motion was based in part on evidence outside the pleadings, and the record suggests that the trial court considered evidence outside the pleadings when ruling on the motion. We therefore review the trial court's ruling as one under MCR 2.116(C)(10). See *Cuddington*, 298 Mich App at 270.

-14-

to a significant number of workers. There is no evidence that anyone other than plaintiff raised a bull float into the air under the power lines. But even assuming that another Merlo employee could have faced the same danger as plaintiff, there is no evidence that any employees of any subcontractors other than Merlo were using high-reaching conductive tools or equipment capable of reaching the overhead power lines. The Carnwath incident occurred seven months earlier under a different span of power lines on a different part of the property, the worker was not injured, and there is no evidence that conductive tools or equipment were used by Carnwath. Overall, there is no evidence that any workers other than plaintiff and perhaps another Merlo employee were exposed to the risk of electrocution from the use of high-reaching conductive tools or equipment capable of reaching the power lines. The evidence thus fails to show a high degree of risk to a significant number of workers. See *Alderman*, 486 Mich at 906. Because plaintiff cannot demonstrate a genuine issue of material fact regarding the third element, his claim under the common work area doctrine fails, and it is unnecessary to consider the other elements.

We observe, however, that plaintiff also failed to establish a genuine issue of material fact regarding the fourth element, i.e., that the dangerous condition was in a common work area. The common work area doctrine is meant "to distinguish between a situation where employees of a subcontractor were working on a unique project in isolation from other workers and a situation where employees of a number of subcontractors were all subject to the same risk or hazard." *Ormsby*, 471 Mich at 57 n 9 (quotation marks and citation omitted). The relevant danger here was the risk of electrocution arising from the use of long conductive tools or equipment capable of reaching the overhead power lines near the street. Plaintiff has presented no evidence that any subcontractor other than Merlo was using such tools or equipment, nor is there evidence that any subcontractors other than Merlo were working in the area of the driveway during the period that Merlo was working there. Merlo was pouring and smoothing concrete for the driveway approach; this appears to have been a unique project performed by Merlo employees in isolation from other workers, at some distance from the building under construction. Because plaintiff did not establish that employees of a number of subcontractors were subject to the same risk or hazard, he failed to establish that the alleged danger existed in a common work area.

Finally, we conclude that plaintiff failed to establish a genuine issue of material fact regarding the first element, i.e., that Kirco Manix failed to take reasonable steps within its supervisory and coordinating authority to guard against the risk or hazard. The evidence reflects that Kirco Manix took numerous reasonable steps to protect against the danger, including asking DTE to insulate the lines, holding mandatory safety-orientation meetings with every employee of every subcontractor during which the overhead power lines were discussed, placing posters on the Kirco Manix trailer where the safety-orientation meetings were held, providing notice of the power lines and the MIOSHA requirement to maintain a 10-foot distance from the lines, placing multiple warning signs on the site regarding the power lines, and providing a Kirco Manix safety handbook and pamphlet to every employee of every subcontractor.

Plaintiff does not dispute that Kirco Manix took steps to address the danger, but argues that Kirco Manix should have been done more, including an additional meeting between Kirco Manix and Merlo and replacing the warning sign that had blown over near the site of plaintiff's accident. However, Kirco Manix would have been required to take *reasonable* steps to address the danger; the fact that more could have been done when viewed in hindsight does not alter the fact that Kirco

Manix took reasonable steps. Kirco Manix is thus entitled to summary disposition of plaintiff's claim under the common work area doctrine.[8]

## 2. KIRCO DEVELOPMENT

Kirco Manix and Kirco Development also contend that the trial court erred by denying Kirco Development summary disposition of plaintiff's claim of negligence. We agree. Plaintiff alleged no basis to conclude that Kirco Development owed a legal duty to plaintiff. Plaintiff relies on events occurring remote in time from his accident. For example, plaintiff asserts that Kirco Development was the original purchaser of the property, but offers no explanation regarding the relevance of this point to the question of duty. It is undisputed that Kirco-OM, which ultimately was dismissed by stipulation of the parties, was the owner of the property at the time of the construction project. Although plaintiff asserts that Kirco Development participated in preconstruction design decisions, there is no evidence that Kirco Development played a direct role in the construction project or possessed authority to make decisions with respect to construction-site safety.

Further, there is no basis to conclude that plaintiff's accident was foreseeable to Kirco Development. As discussed regarding DTE and Oerlikon, Kirco Development likewise had no reason to anticipate that Merlo would supply its employees with conductive-handled bull floats to use in proximity to overhead power lines, in violation of a MIOSHA regulation, or that plaintiff would unnecessarily raise a 23½-foot conductive-handled bull float vertically into the air under the overhead power lines of which he was admittedly aware. Kirco Development thus owed no legal duty to plaintiff, and therefore is entitled to summary disposition on plaintiff's negligence claim. See *Hill*, 492 Mich at 660-661.

## E. DOCKET NO. 356542

In Docket No. 356542, NSRC and Streb argue that the trial court erred by denying their motion for summary disposition of plaintiff's claim of negligence. We agree. At the time of plaintiff's accident, NSRC had contracted to act as a safety consultant for Merlo. Christopher Streb is the principle of NSRC. The extent of NSRC and Streb's undertaking was limited to certain specific safety-consulting services that Merlo could request and use as it wished. The parties do not dispute that Merlo did not inform NSRC and Streb of the Oerlikon site or request safety-consulting services specific to that site. Streb testified that Merlo did not inform him about its contract with Kirco Manix or about Merlo's work on the Oerlikon construction project until after plaintiff was injured. Merlo did not contact Streb about conducting a site-specific safety audit of

---

[8] Plaintiff contends that his second amended complaint included a claim of active negligence against Kirco Manix. Our review of the second amended complaint reveals no claim of active negligence against Kirco Manix, and our review of the record reveals no evidence that would support that claim. Plaintiff's theory of negligence pertains to Kirco Manix's broad supervisory role as general contractor for the construction project, not to any specific tasks performed by Kirco Manix as part of the project and that would give rise to a duty of due care.

the Oerlikon construction site, and NSRC thus did not inspect the Oerlikon site before plaintiff's accident. Plaintiff's accident therefore was not foreseeable to NSRC and Streb, and NSRC and Streb did not owe a legal duty to plaintiff in connection with his accident. Plaintiff suggests that NSRC and Streb should have ensured that Merlo supply its employees with nonconductive-handled bull floats to use in proximity to overhead power lines. However, NSRC and Streb lacked the ability to advise Merlo about the appropriate tools to use at a worksite that they did not know existed. Given these circumstances, NSRC and Streb could not reasonably have foreseen plaintiff's accident.

Plaintiff further argues he had a special relationship with NSRC and Streb and that they thus owed a duty to protect him, but cites no authority establishing that a special relationship exists between a safety-consulting company and an employee of the company's client. Plaintiff did not entrust himself to the control and protection of NSRC, nor did Merlo entrust its workforce at the Oerlikon worksite to NSRC. See *Bailey*, 494 Mich at 604. Merlo did not tell NSRC about the Oerlikon worksite or ask for site-specific safety services for the Oerlikon worksite. NSRC thus had no ability to advise Merlo about the hazards specific to that site or the appropriate tools to use in light of those hazards. Because NSRC and Streb did not owe a legal duty to plaintiff, they are entitled to summary disposition of plaintiff's negligence claim. See *Hill*, 492 Mich at 660.

In each consolidated case, we reverse the trial court's order denying the respective defendants summary disposition and remand to the trial court for entry of summary disposition for the respective defendants. We do not retain jurisdiction.


/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

-17-