*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RUSSELL MCKIE,

        Plaintiff-Appellant,

v

CONSUMERS ENERGY COMPANY,

        Defendant-Appellee.

UNPUBLISHED
September 21, 2023

No. 364690
Monroe Circuit Court
LC No. 2020-143029-NI

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition in defendant's favor in this negligence action arising from the electrocution of plaintiff that occurred while he was power-washing a home for a customer. We affirm.

## I. BACKGROUND FACTS

On June 3, 2020, plaintiff filed his complaint alleging that on June 6, 2017, he was power-washing the back of a home when "mist from the home came in contact with the low-hanging power lines, which in turn caused electricity to flow through Plaintiff's spraying wand, resulting in Plaintiff becoming electrocuted." According to plaintiff, defendant Consumers Energy Company had previously been notified about the low-hanging power lines. Plaintiff asserted that defendant had a duty "to safely maintain and ensure that powerlines are positioned in a manner and location to protect those near the line, and to inspect, repair, insulate and protect all persons conducting reasonably foreseeable activity from injury from the powerlines." And, plaintiff alleged, defendant breached its duty "by failing to properly place their powerlines in a location that would ensure the safety of others conducting reasonably foreseeable activity and/or by negligently failing to move the powerlines upon express notice of the danger of their lines."

On August 25, 2021, defendant filed a motion for summary disposition arguing, in relevant part, that plaintiff's claim could only be based on premises liability law and was barred by the open and obvious doctrine. Plaintiff opposed the motion arguing, in relevant part, that this was not a premises liability matter because defendant was not the possessor of land. Following oral arguments on the motion, the trial court agreed with defendant that the case was based on premises

-1-

liability law and the power lines at issue were open and obvious, precluding liability. On September 24, 2021, an order was entered consistent with the court's holding, and plaintiff's case was dismissed. Plaintiff appealed to this Court and, by opinion issued on September 1, 2022, the trial court's order was vacated and the matter remanded for further proceedings. *McKie v Consumers Energy Co*, unpublished per curiam opinion of the Court of Appeals, issued September 1, 2022 (Docket No. 358845). In brief, citing to the cases of *Schultz v Consumers Power Co*, 443 Mich 445; 506 NW2d 175 (1993) and *Case v Consumers Power Co*, 463 Mich 1; 615 NW2d 17 (2000), this Court held that the action did not sound in premises liability; thus, the trial court erred in granting summary disposition to defendant. *Id*. at 5-8.

Following remand, on November 8, 2022, defendant filed a motion for summary disposition under MCR 2.116(C)(10), arguing that Michigan law does not recognize the alleged duty upon which plaintiff predicated his claim, and further, plaintiff could not establish proximate cause to sustain his claim. Relying on *Schultz*, 443 Mich 445, defendant argued that it owed no duty to plaintiff under the circumstances of this case. Unlike the circumstances in *Schultz*, the power lines at issue here had been in existence even before the house that plaintiff was power-washing was built. The power lines and supporting structures were installed in 1949 and the house abutting the utility easement was built in 1977. And contrary to the facts in the *Schultz* case, in this case plaintiff admitted that there were no defects in the electrical equipment or power lines. However, plaintiff claimed that defendant negligently failed to move the power lines after the house was built. But, defendant argued, it had no duty to move the preexisting power lines and supporting structures "in reaction to the later construction of the house."

Defendant also noted that measurements taken by its representative, Jeffrey Chonko, "found that the lowest hanging power line (*the "Z phase" line*) was at a vertical distance of 18 feet 4 inches above ground level and at a horizontal distance between 9 and 10 feet from the house." Plaintiff did not dispute those measurements and those "clearance distances fully comply with the National Electrical Safety Code (NESC) specifications, which require no more than 14 feet 6 inches of vertical clearance . . . and 7 feet 6 inches of horizontal clearance." Moreover, defendant argued, plaintiff's expert, Richard Buchanan, "acknowledges that these NESC distance specifications were not violated." Although plaintiff—a professional contractor with over 20 years of experience—denied making any contact with the power lines, his own expert, Buchanan, testified that the wand plaintiff was holding had to be within 6 inches of the power line for the electrical arching described by plaintiff to have occurred. And plaintiff admitted both that he was working within six to eight feet from the wire—in violation of MIOSHA regulations—and that he knew the danger of working near power lines. In summary, defendant argued, it owed no duty to plaintiff, whose injuries were not foreseeable and could not be anticipated. Defendant's conduct also could not be deemed a "proximate cause" of plaintiff's injuries. The power lines were not defective and were properly located: the cause of plaintiff's injuries were his own actions. Defendant is not charged with "absolute liability" and Michigan law does not require relocation of preexisting power lines every time new construction is built by third parties. Therefore, defendant was entitled to the summary dismissal of plaintiff's claims. Defendant attached several exhibits to its motion, including its utility easement documents; transcript excepts of Buchanan's deposition testimony; a report from James Heyl, P.E., a senior engineer at State-Wide Consulting & Investigating; plaintiff's response to defendant's first request for admissions; transcript of plaintiff's deposition testimony; photographs of the house, power lines, and power-washing wand; report of defendant's representative Jeffrey Chonko; transcript of Chonko's deposition testimony;

excepts of regulations related to overhead power lines; transcript excepts of the deposition of Peter Mulhearn, a design engineer for defendant; MIOSHA fact sheet; and a copy of Michigan Administrative Code R 408.40115.

Plaintiff opposed defendant's motion for summary disposition, arguing that defendant had a duty to maintain and repair the power lines at issue and these power lines were within nine to ten feet of the home plaintiff was power-washing—instead of at least 20 feet away as mandated by defendant's own standards. Although the power lines were in existence before the home was built, plaintiff argued, defendant still had a duty to move the power lines to ameliorate the hazard. Plaintiff further argued that, as testified by his expert, Buchanan, defendant should have anticipated that most houses have vinyl siding and homeowners have their vinyl siding washed, which is a reasonable activity; thus, power lines within ten feet of houses pose a safety hazard such that injuries are foreseeable. Accordingly, defendant's duty to repair and maintain their power lines included the duty to move them. Further, defendant's negligence in failing to relocate the power lines was a proximate cause of plaintiff's injuries. Therefore, defendant was not entitled to summary disposition and its motion must be denied. Plaintiff attached several exhibits to his responsive brief, including transcript excerpts of plaintiff's deposition; transcript excerpts of the deposition of defendant's representative, Chonko; an affidavit of the homeowner, David Althaus; transcript excepts of the deposition of Mulhearn, a design engineer for defendant; transcript excerpts of the deposition of Buchanan; and copies of NESC Rule 012.

Defendant filed a reply to plaintiff's brief, arguing that plaintiff was an experienced workman who failed to take adequate precautions when working near power lines that were not in disrepair; thus, the circumstances and plaintiff's injuries were not foreseeable to defendant and it owed no duty to plaintiff that was breached or that was a proximate cause of his injuries. And although defendant did not violate any of its own policies or NESC, OSHA, or MIOSHA requirements, even if it did, these regulations do not create any duties with regard to third parties. As the Michigan Supreme Court has held, public policy precludes "a duty to relocate, insulate, or de-energize power lines whenever third parties construct buildings near power lines[.]" *Groncki v Detroit Edison Co*, 443 Mich 644, 661; 557 NW2d 289 (1996); see also *Valcaniant v Detroit Edison Co*, 470 Mich 82, 87; 679 NW2d 689 (2004).

On December 21, 2022, the trial court held oral arguments on defendant's motion for summary disposition and the parties argued consistently with their briefs. Relying on the holdings primarily set forth in *Schultz*, 443 Mich 445 and *Groncki*, 443 Mich 644, the trial court concluded that defendant had no duty to relocate or insulate the power lines at issue; thus, defendant was entitled to summary disposition. The court noted that multiple factors are considered when determining whether a duty of care exists, including the relationship of the parties, and the nature and foreseeability of the risk. In this case, the power lines were not in disrepair, they were in place before the house was built, plaintiff was a professional power-washer, plaintiff was aware of the hazards of power-washing near power lines, the power-washer wand he was using also had a warning label regarding that danger, and public policy considerations expressed in case law (i.e., the need for electric power at reasonable cost and the significant cost and difficulty or impossibility of moving thousands of miles of preexisting power lines so that they are not near structures) dictate against imposing such a duty on defendant. Thereafter, an order was entered granting defendant's motion for summary disposition. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review de novo a lower court's decision on a motion for summary disposition brought under MCR 2.116(C)(10). *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). A motion brought under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Spiek v Dept of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The moving party must identify the matters that have no disputed factual issues, and has the initial burden of supporting its position with documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The party opposing the motion must then establish by evidentiary materials that a genuine issue of disputed fact exists. *Id*. at 362-363. After considering the documentary evidence submitted in the light most favorable to the nonmoving party, the court determines whether a genuine issue of material fact exists to warrant a trial. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

### B. DUTY OF CARE

To prove a negligence claim, a plaintiff must establish that the defendant owed the plaintiff a legal duty, the duty was breached, the plaintiff suffered damages, and the defendant's breach was a proximate cause of the plaintiff's damages. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). The dispositive issue in this case is whether defendant owed plaintiff a duty of care, i.e., was under a legal obligation to act for plaintiff's benefit—which presents a question of law. See *id*.; see also *Dyer v Trachtman*, 470 Mich 45, 49; 679 NW2d 311 (2004); *Buczkowski v McKay*, 441 Mich 96, 100-101; 490 NW2d 330 (1992). In other words, for plaintiff to establish his case against defendant, plaintiff must show that defendant owed a legal duty to plaintiff. See *Beaty v Hertzberg & Golden, PC*, 456 Mich 247, 262; 571 NW2d 716 (1997).

In making the determination whether a duty of care exists, courts consider a multitude of factors, including whether there is a sufficient relationship between the plaintiff and the defendant, the nature of the risk, and the foreseeability of the risk. *Schultz*, 443 Mich at 450. As we explained in our previous opinion, *McKie*, unpub op at 5-6, our Supreme Court in *Schultz* recognized that a relationship exists between an electric utility company and the public with respect to its high-voltage power lines such that "the company must exercise reasonable care to protect the public from danger." *Schultz*, 443 Mich at 454. That is, the *Schultz* Court held, "compelling reasons mandate that a company that maintains and employs energized power lines must exercise reasonable care to reduce potential hazards as far as practicable." *Id*. at 451. And, "pursuant to its duty, a power company has an obligation to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects." *Id*.

However, as we also previously noted, *McKie*, unpub op at 7, the *Schultz* Court clarified that this duty does not impose "a rule of absolute liability." *Schultz*, 443 Mich at 454. Rather, the issue whether a duty is owed under a particular set of circumstances also requires consideration of the foreseeability variable. *Id*. at 451-452. The *Schultz* Court explained:

> Those engaged in transmitting electricity are bound to anticipate ordinary use of the area surrounding the lines and to appropriately safeguard the attendant risks. The test to determine whether a duty was owed is not whether the company

should have anticipated the particular act from which the injury resulted, but whether it should have foreseen the probability that injury might result from any reasonable activity done on the premises for business, work, or pleasure. [*Id*. at 452.]

The *Schultz* Court noted that "[a] plaintiff need not establish that the mechanism of injury was foreseeable or anticipated in specific detail. It is only necessary that the evidence establishes that some injury to the defendant was foreseeable or to be anticipated." *Id*. at 452 n 7.

In this case, plaintiff claimed that defendant owed him a duty of care and the scope of that duty included moving the power lines to eliminate the potential hazard of electrocution—which was a foreseeable harm confronted during routine maintenance like power-washing the nearby house. We disagree.

Plaintiff testified in his deposition that he had worked in the painting and power-washing business for about 25 years and owned the power-washing business. When plaintiff arrived in the backyard of the home he was power-washing, he saw that the power lines were close to the house and they "looked concerning" to him. The wires were hanging over the top of the cement porch and were hung on an angle running toward the corner of the house, where the electricity fed into the house. Plaintiff was using a power-washing spray wand that was about eight or nine feet long, but could extend to about 12 or 13 feet. While spraying the back of the house, plaintiff was keeping the nozzle end about four to six inches away from the house. He was power-washing the back of the house, at the "very top" of the second-story and saw that the "water was shooting towards the wires because it was hitting – you know I'm shooting on a 45-degree angle toward the house, it's hitting that gutter, which didn't have much of a soffit." Plaintiff further testified: "I don't know if that caused more, you know, heat molecules in the way it – when it was hitting the siding and then hitting the gutter and coming off of it toward the wires, the water molecules were coming towards that wire, and I was just thinking, you know, I want to get out of here, get this – you know, I was trying to get that part done so I could get away from that corner." Plaintiff was standing on the back porch when he saw electricity come from the wire, through the water molecules, to the gutter, and then straight to him. He was electrocuted for about eight or nine seconds.

On the day of the incident, defendant's electric field leader, Jeffrey Chonko, investigated the scene, took measurements, and spoke with the homeowner, David Althaus.[1] He measured the distance from the ground at the base of the home to the closest energized wire as nine to ten feet. He took other measurements of the lines and they all "were within spec." Chonko did not see anything wrong when he was in the yard—nothing hazardous and no violations. But defendant's engineer for high-voltage distribution lines, Mulhearn, testified in his deposition that, prior to this accident, defendant was planning to relocate the power lines at this location to conform to

---

[1] Althaus submitted an affidavit stating that, at some time prior to plaintiff's accident, a power line closest to the back of his house had fallen down. He also averred that he and his neighbors had complained to defendant about the power lines being too close to their houses and requested that they be moved.

defendant's current new-build standards which was a 20-foot separation from the power line to any building.[2] In any case, as defendant's expert engineer, James Heyl from State-Wide Consulting and Investigating, stated in his report, there were no violations of code with respect to defendant's power lines at the time of plaintiff's accident. Heyl opined that plaintiff was electrocuted when the water in the spray wand or hose became energized and transmitted an electrical current into plaintiff's hand, through his body, and into the ground.

Plaintiff's expert, Richard Buchanan, testified that he also believed plaintiff was electrocuted when the electricity from the power line traveled through the water or mist to the spray wand and through plaintiff's body into the ground. Plaintiff's power-washing wand had a very small pinhole burn mark on it which was "evidence that there was an arc that initiated the current flow from the energized line to the wand." Buchanan believed that the end of plaintiff's spray wand had to have been within six inches of the energized electrical line to initiate that arc in the spray mist. Buchanan testified that defendant did not violate the NESC with respect to the positions of the vertical or horizontal line placement; rather, defendant violated Rule 012C[3] of the NESC because after the housing development was built—which was almost 30 years after the power lines were installed—defendant should have noticed and remedied the safety hazard by moving the power lines further away from the house. Buchanan testified that defendant would have been aware that this housing development abutted up against their power lines and should have moved the power lines.

Under the circumstances presented in this case, we agree with the trial court that defendant was entitled to summary disposition because it did not owe a duty to plaintiff that included moving the power lines at issue. More particularly, it was not foreseeable to defendant that an experienced power-washer, who saw the location of the power lines and understood that they were energized, would continue to spray water at the house, and in the same manner, despite seeing that the water was ricocheting off the house and "shooting towards the wires." The mist of water created by plaintiff's actions led to his electrocution. This is not a case where the power lines were in disrepair or frayed; rather, as plaintiff's own expert testified, the end of plaintiff's spray wand had to have been within six inches of the energized electrical line to initiate that arc in the spray mist that resulted in plaintiff's electrocution. Defendant could not have reasonably foreseen the circumstances that led to plaintiff's injuries. As our Supreme Court explained in *Schultz*, 443 Mich at 451, "a company that maintains and employs energized power lines must exercise reasonable care to reduce potential hazards as far as practicable." It is not practicable to require a company that maintains and employs energized power lines to foresee every conceivable potentially

---

[2] We note that the imposition of a legal duty based on a defendant's internal policies is contrary to public policy, however, because such a rule would encourage the abandonment of policies enacted for the protection of others so as to avoid future liability. See *Buczkowski*, 441 Mich at 99 n 1.

[3] The NESC Rule 012C states: "For all particulars not specified, but within the scope of these rules, as stated in Rule 011A, construction and maintenance should be done in accordance with accepted good practice for the given local conditions known at the time by those responsible for the construction or maintenance of the communication or supply lines and equipment."

hazardous human act that might result in electrocution—including the spraying of water from a power-washing wand within six inches of an energized, non-defective electrical line.

Plaintiff argues on appeal that, according to the holding in *Schultz*, defendant had a duty to plaintiff because the power line was defective as evidenced by the fact that it had fallen down at some previous time. Plaintiff's logic is hard to follow because the fact that the power line had fallen down at some time in the past had nothing to do with the fact that plaintiff was electrocuted when he continued to spray water from his power-washing wand within six inches of an energized electrical line despite seeing that the water was going toward those lines. Plaintiff also argues that the trial court incorrectly relied on the fact that he was a professional power-washer to determine that defendant owed no duty of care to him. But in *Groncki*, 453 Mich at 657, our Supreme Court's foreseeability analysis with respect to whether a duty was owed, noted that the electric company in that case "could not have reasonably foreseen that a skilled workman, with full knowledge of the power lines, would bring a crane into contact with those power lines."[4] The *Groncki* Court specifically distinguished a "homeowner unfamiliar with the dangers of electric lines" from "an experienced workman who was fully aware of the presence of the wires" and associated dangers, and concluded that it was not foreseeable to the electric company that the experienced workman would confront the hazard, and thus, no duty was owed. *Id*. at 659. And, in this case, plaintiff testified in his deposition that he had been in the power-washing business for about 25 years and understood the dangers posed by the power lines.[5]

But plaintiff argues that this case is more factually similar to the facts in *Schultz*, which involved a homeowner who was electrocuted when an electric current "arced" from a power line to an aluminum ladder that was in use. See *Schultz*, 443 Mich at 448-449 & 448 n 2. In that case, though, the power line was dilapidated and frayed—which caused the arc from the wire to the ladder. *Id*. at 448, 453. In this case, the power line was not in disrepair; rather, the spraying of water from a power-washing wand within six inches of an energized electrical line caused the arcing that resulted in electrocution. While it was foreseeable that someone performing routine maintenance on a home near a dilapidated power line could be injured by that power line, *id*. at 453, such is not the case here.

---

[4] The *Groncki* case "consolidated three lawsuits brought against [Detroit] Edison by individuals who were injured when equipment they were using outdoors came into contact with overhead power lines." *Valcaniant*, 470 Mich at 86-87.

[5] Plaintiff testified that he knew the power lines were behind him and "definitely knew that there was a huge amount of power behind me . . . . I been doing it for 20 years, I know better than to mess around with that stuff that was behind me."

In conclusion, the trial court properly granted defendant's motion for summary disposition because plaintiff's injury was not foreseeable to defendant; therefore, defendant had no duty to plaintiff that included moving the power lines at issue.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly